# EXHIBIT A

## FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case No. | 134060 |
| SED ID No. | 64752 |
| Student's Name: | D██████ A██████████ |
| Date of Birth: | May 26, 1999 |
| District: | 2 |
| Hearing Requested by: | Parents |
| Dates of Hearings: | January 23, 1012 |
| | February 21, 2012 |
| | May 1, 2012 |
| | June 5, 2012 |
| | July 11, 2012 |
| Record Close Date: | August 21, 2012 |
| Hearing Officer: | Mindy G. Wolman |

Findings of Fact and Decision                                                    2
Case No. 134060

On July 13, 2011, the parents (the "Parents") of D.A (the "Student") filed a due process complaint (Parent Exh. A) requesting an impartial hearing under the Individuals with Disabilities Education Improvement Act (the "IDEIA"),[1] 20 U.S.C. section 1415 *et seq* and Article 89 of the New York State Education Law. The due process complaint was amended on November 18, 2011 (DOE Exh. 3). The New York City Department of Education (the "DOE") responded to the initial due process complaint on July 19, 2011 (DOE Exh. 2), and to the Amended Due Process Complaint on November 22, 2011 (DOE Exh. 4). I was appointed as impartial hearing officer in this proceeding, after the recusal of the impartial hearing officer previously appointed in this matter, on December 20, 2011. This proceeding came on for a pre-hearing conference on January 23, 2012 (IHO Exh. I) and for substantive hearings on February 21, 2012, May 1, 2012, June 5, 2012, and July 11, 2012.

The compliance date for issuing a decision in this proceeding has been extended. The extended compliance date in this proceeding is September 4, 2012; written documentation regarding the compliance date extension requests that were granted in this proceeding is included in the Hearing Record.[2] Lists of the persons who appeared at the hearings and the documentary evidence submitted are appended to this Order.

## BACKGROUND AND POSITIONS OF THE PARTIES

D.A. is a thirteen year old male student who is classified as a student with a disability having a speech or language impairment. His classification and eligibility to receive special education supports and services are not in dispute. This proceeding involves the Parents' request for tuition reimbursement for the 2010-2011 school year. The DOE's Committee on Special Education (the "CSE") convened a CSE meeting on April 19, 2010 and prepared an Individualized

---

[1] In 2004, Congress reauthorized the Individuals with Disabilities Education Act ("IDEA") as the IDEIA. See Pub. L. No. 108-446, 118 Stat. 2647 (Dec. 3, 2004), effective July 1, 2005. Throughout this decision, statutory references will be to the IDEIA, except when quoted in judicial decisions or other sources as the IDEA.

[2] Documentation regarding the compliance date extensions granted after my appointment as IHO is included in the Record as IHO Exhs. II, III, IV, V, VI, VII, and VII. According to the New York State Education Department Impartial Hearing Reporting System ("IHRS") database, the compliance date for issuing a decision in this case was extended three times prior to my appointment as IHO. I was not provided with any written documentation regarding the compliance date extensions that pre-dated my appointment. The last compliance date extension in this case extended the compliance date to Saturday, September 1, 2012. Per the New York State General Obligations Law, the extended compliance date is September 4, 2012 (the next business day after September 1).

Findings of Fact and Decision                                                               3
Case No. 134060

Education Program ("IEP") which recommended that D.A. be placed in a 12:1:1 special class in a community school, with speech therapy, occupational therapy, and counseling as related services (Parent Exh.C). On April 19, 2010, the CSE recommended that the Student's placement in the recommended program be deferred until September 13, 2012 (DOE Exh. 10). On August 6, 2010, the CSE issued a Final Notice of Recommendation ("FNR") in which it offered the Student placement in a 12:1:1 special class at P.S.6 in Manhattan (DOE Exh. 20). The Parents rejected the CSE's program and placement recommendations, and unilaterally placed the Student at the Aaron School ("Aaron") for the 2010-2011 school year.  They now seek tuition reimbursement for that placement.

        The Parents challenge the CSE's program and placement recommendations on a variety of substantive and procedural grounds.  They assert that the Parents were not afforded a full and meaningful opportunity to participate in the development of the Student's IEP, that the CSE failed to consider sufficient and appropriate evaluative material, that the IEP was substantively inadequate (it did not address or accurately reflect the Student's levels of performance and educational needs, was not reasonably calculated to enable to the Student to make meaningful educational progress, and did not contain sufficient and appropriate goals), and that the DOE failed to demonstrate that it offered the Student an appropriate placement. The Parents maintain that the Aaron placement was appropriate for the Student, that it provided him with educational instruction that was specially designed to meet the Student's unique special education needs, that the program was supported by the services that were necessary to enable him to benefit from instruction, and that the Student made measurable and meaningful progress at Aaron during the 2010-2011 school year. The Parents further maintain that equitable factors support their tuition reimbursement claim.

        The DOE maintains that the CSE complied with all procedural requirements and that the IEP was substantively appropriate. It argues that the CSE that met on April 19, 2010 to prepare the Student's IEP included all necessary members; it asserts that even if the "additional parent member" was required, the absence of the additional parent member did not result in a denial of FAPE or did not impede the Parents' right to participate in the decision-making process. The DOE maintains that the IEP appropriately described the Student and recommended an appropriate and

Findings of Fact and Decision                                                                    4
Case No. 134060

sufficient program, as well as appropriate and sufficient goals and appropriate promotional criteria. The DOE further asserts that the CSE made a timely offer of placement and that, since the Parents rejected that placement, the appropriateness of the DOE's recommendations should be based on the IEP alone. In the alternative, it asserts that the Student's IEP could have been appropriately implemented at P.S.6. The DOE maintains that the Aaron placement was not appropriate because it was too restrictive (it did not provide the Student with mainstreaming opportunities). The DOE also asserts that equitable factors do not support the Parents' reimbursement claim because the Parents did not comply with IDEIA notice requirements and because they never intended the Student to be educated in a public school.

The DOE presented the testimony of a special education teacher from P.S.6 and of a special education teacher who participated at the April 19, 2010 CSE meeting. The Parents presented the testimony of the Student's father (the "Father"), the Aaron Head of School, and of the Head Teacher of the Student's 2010-2011 class at Aaron.  Both parties submitted documentary evidence. The parties' arguments are more fully set forth in their post-hearing submissions (IHO Exhs. IX and X). Their legal and factual arguments, along with the testimony and documentary evidence presented in this proceeding, is more fully discussed below.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The IDEIA provides that children with disabilities are entitled to a Free Appropriate Public Education ("FAPE") (20 U.S.C. § 1400 [d][1][A]. A FAPE consists of specialized education and related services designed to meet a student's unique special education needs, provided in conformity with a written Individualized Education Program (" IEP") (34 C.F.R. § 300.13). A FAPE is offered when (a) the board of education complies with the procedural requirements set forth in the IDEIA; and (b) the IEP is developed through the IDEIA's procedures and is reasonably calculated to enable the student to receive educational benefits (see Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206-07 [1982]).

A board of education may be required to pay for educational services obtained for a child by the child's parent, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parent were appropriate, and equitable considerations

support the parent's claim. (<u>School Committee of the Town of Burlington v. Department of Education, Massachusetts</u>, 471 U.S. 359 [1985]; <u>Florence County School District Four et al. v. Carter by Carter</u>, 510 U.S. 7 [1993]; <u>see</u> also <u>Frank G. and Dianne G. v. Bd. of Educ. of Hyde Park</u>,459 F.3d 356 [2d Cir. 2006], <u>cert denied</u>, <u>Board of Educ. of Hyde Park Cent. School Dist. v. Frank G.</u>,2007 WL 2982269 [Oct. 15, 2007].

The DOE has the burden of proving that it offered to provided the Student with a FAPE for the 2010-2011 school year. In order to meet this burden, it must establish that its CSE recommended an appropriate program and placement. The DOE must establish that the CSE's program and placement recommendations were reasonably calculated to enable the Student to make meaningful educational progress. As noted above, the Parents have challenged the CSE's program and placement recommendations on both substantive and procedural grounds.

Decisions of impartial hearing officers must be on substantive grounds, based on a determination of whether a the student received a FAPE, 8 NYCRR § 200.5(j)(4)(i),  except as follows:

> In matters alleging a procedural violation, an impartial hearing officer may find that a student did not receive a free appropriate public education only if the procedural inadequacies impeded the student's right to a free appropriate public education, significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a free appropriate public education to the parent's child, or caused a deprivation of educational benefits. 8 NYCRR § 200.5(j)(4)(ii).

Although I find that an "additional parent member" was a required participant at the April 2010 CSE meeting, I find that the absence of the additional parent member did not impede the Student's right to a free appropriate public education, did not significantly impede the Parents' opportunity to participate in the decision-making process regarding the provision of a FAPE, and did not cause a deprivation of educational benefits.

Turning to the Parents' other arguments, I note that Feng Ye, the DOE special education teacher who testified about the April 2010 IEP meeting, indicated that she had "some" recollection of the meeting, but "not much" (Tr. at 192). She reviewed the hearing exhibits immediately prior to

her hearing testimony (Tr. at 193) and it appears that her testimony was based more on her review of the documents than on any independent recall of the IEP meeting. She relied on the IEP document in order to answer questions about the CSE program recommendations and how they arrived at the recommendations. The Father also testified about the April 2010 IEP meeting. Not surprisingly (since he attended one CSE meeting that year, while Ms. Ye participated in about 200 meetings that year), the Father had a better and more detailed recollection of the meeting. Having had the opportunity to consider the reliability and credibility of both witnesses, I find that I must give much more weight and credence to the testimony of the Father than to the testimony of Ms. Ye.

Although evaluation material was available, the CSE did not consider and discuss appropriate and sufficient evaluative material. Ms. Ye and Rose Fochetta (the DOE school psychologist who participated at the April 2010 CSE meeting) had access to and may have relied on the Student's psychological, psychoeducational, speech and language, and occupational therapy evaluations, classroom observation, teacher reports, provider reports, social history, medical reports, etc.. Although the Parents had copies of some of these documents, Ms. Ye did not share the materials with the other meeting participants and the materials were not discussed at the CSE meeting. The other participants at the CSE meeting included the general education teacher who participated at the CSE meeting and the Student's then-current special education teacher (who participated by telephone).

In addition, although Ms. Ye and Ms. Fochetta prepared draft copies of IEP pages prior to the CSE meeting and in fact relied upon the drafts at the CSE meeting, copies of the IEP draft were not given to the other meeting participants. As a result of the failure to provide all meeting participants with relevant evaluation material and with the IEP draft, the CSE deprived the Parents, the Student's special education teacher, and the DOE general education teacher who participated at the meeting with the opportunity to meaningfully participate in the development of the IEP.

Ms. Ye acknowledged that the CSE did not review or discuss a social history, occupational therapy evaluation, speech and language evaluation, physical or medical report, or a psychological or neuropsychological evaluation (Tr. at 219-221). Although Ms. Ye indicated that she reviewed

Findings of Fact and Decision                                              7
Case No. 134060
_____

the Student's psychological evaluation for her own information and purposes (Tr. 222) and that
portions of the psychological evaluation were incorporated into the IEP (Tr. 226), she testified that
it was not necessary to review the evaluation at the CSE meeting (Tr. at 223).  I must disagree. If
the psychological evaluation was important for Ms. Ye to review prior to the meeting and
contained material that was being incorporated into the IEP, it was then important to provide the
other meeting participants with a copy of the evaluation and to discuss the evaluation at the
meeting.

      Ms. Ye testified that although the Father had faxed her a copy of the Student's prior (2009)
IEP prior to the April 2010 meeting, the IEP was not made available to the other CSE participants
or discussed at the meeting.  In making recommendations for the 2010-2011 IEP, the CSE should
have reviewed and discussed his prior IEP, the progress he had made toward meeting his prior
goals, etc.  The failure to provide the meeting participants with evaluation material and the
Student's prior IEP, and the CSE's complete failure to discuss the Student's evaluations, prior IEP,
etc., leads me to conclude that the CSE's recommendations were not reasonably calculated to
enable the Student to make meaningful educational progress.  In order to be "reasonably
calculated," it would seem that the CSE must consider and discuss appropriate data and
information.

      Ms. Ye's testimony and the documentary evidence presented at the hearing wa not
sufficient to meet the DOE's burden of proof in this proceeding. Ms. Ye testified that the CSE
recommended a 12:1:1 program because it "had no material to say it is not appropriate" (Tr. at
272).  However, the recommendation should not have been made without a basis for finding that it
was, in fact, appropriate.  A review of the testimony and documentary evidence presented at the
hearing leads me to conclude that the CSE's April 2010 recommendations for the Student were not
appropriate.  A 12:1:1 program would not have provided the level and type of support that the
Student needed. Based on the testimony and documentary evidence presented by the Parents, it
appears that the Student requires a small class (twelve students) with two teachers in order to make
meaningful progress.  The DOE did not establish that the Student's needs could have been met

Findings of Fact and Decision                                                                            8
Case No. 134060

with a teacher and a paraprofessional.

Moreover, the IEP did not adequately describe or address the Student's academic, speech and language, and social-emotional issues. His anxiety, auditory processing issues, and cognitive rigidity were also not addressed. The Parents also argue that the IEP goals did not address all of the Student's individual needs, and that the goals did not include appropriate and measurable benchmarks. They note that several of the goals required the Student to reach grade level by the end of the 2010-2011 school year. They maintain that such goals were neither reasonable nor appropriate in light of the fact that the Student was two to three years below grade level as of the IEP meeting. I agree with the Parents. Goals that require the Student to make two to three years of academic progress in one academic year are neither reasonable nor appropriate.

Based on all of the foregoing factors, I find that the CSE's April 2010 program recommendations were not reasonably calculated to enable the Student to make meaningful educational progress.

The DOE argues that I should not consider whether or not the P.S.6 placement could have implemented the IEP because the Parents rejected the DOE's placement offer. As such, it argues, "the appropriateness of the Department's program recommendation should be measured by consideration of the IEP alone (IHO Exh. IX at 11). I disagree. The Parents did not reject the CSE's recommendations until after receiving and considering the CSE's August 6, 2010 P.S.6 placement offer. Had the Parents found that the P.S.6 placement was appropriate, they would have availed themselves of the public school placement offer. Under the circumstances of this case, there is no basis for relieving the DOE of the burden of proving that the CSE's proposed placement wold have been appropriate for the Student.

Having considered the testimony of Ms. Radden, a special education teacher from the school, I find that the DOE did not establish that the P.S.6 placement would have been able to adequately implement the Student's IEP and that he would have been suitably grouped for instructional purposes with the other students at the school. In addition, P.S.6 would not have been able to adequately address the Student's sensory needs or his anxiety issues. Ms. Radden's testimony regarding the manner in which the Student's needs would have been met in her class was

based, in large part, on what was contained in the IEP. However, the IEP didn't address the Student's anxiety issues, cognitive rigidity and auditory processing issues. Even if the IEP could have been implemented in Ms. Radden's class, the DOE did not establish that the Student's anxiety, cognitive rigidity and auditory processing issues would have been addressed in the class. The Student's social-emotional issues differed from the other students in the class. The DOE did not establish that the Student's social-emotional issues would have been adequately addressed at P.S. 6. The class also required a level of independent work that would not have been appropriate for the Student. The other students in the class did not need the high level of redirection, refocusing and prompting that the Student needs, and they did not have similar language difficulties. Ms. Radden's testimony was not sufficient to meet the DOE's burden of establishing that the P.S.6 placement was appropriate for the Student and that he would have been provided with a FAPE at the school.

Based on all of the forgoing reasons, I find that the DOE did not meet its burden of proving that it offered the Student a FAPE for the 2010-2011 school year. Neither the Student's IEP nor the P.S.6 placement were reasonably calculated to enable the Student to make meaningful educational progress. The Parents have therefore met the first of the three Burlington/Carter criteria for tuition reimbursement.

The Parents have the burden of proving that the Aaron placement was appropriate for the Student for the 2010-2011 school year. In order to meet this burden, the Parents must establish that the program provided instruction specially designed to meet the Student's unique special education needs. Although the restrictiveness of the program may be considered, the program need not be in the least restrictive environment ("LRE"). The program need not employ certified special education teachers or provide all of the services needed by the student.

The DOE's sole challenge to the appropriateness of the Aaron placement was it was too restrictive and provided no mainstreaming opportunities (IHO Exh. IX at 13-14). It argues that I should find that Aaron was not appropriate because the Parents did not establish that the Student needed to be in an environment that did not have any mainstreaming opportunities (IHO Exh. IX at 14). However, the Parents need not establish that the Student required a program that did not have

mainstreaming opportunities. Moreover, the Parents need not establish that the program is
"perfect." They need only establish that the program provides educational instruction that is
specifically designed to meet the Student's unique needs. Having reviewed the testimony present
by the Parent's witnesses and the Parents' documentary evidence regarding the Aaron School,
regarding the Student's program at the Aaron School, and regarding the progress that he made in
the program, I find that the Aaron School provided the Student with educational instruction that
was specifically designed to meet the Student's unique needs. The Aaron School program is
designed for children who have average or above average cognitive ability, have difficulty in
functioning in mainstream programs, and who need a small, structured, multisensory approach to
learning. The Student is that type of student. The Student's class at the Aaron School had two
teachers and eleven students. The class also had a speech therapist, occupational therapist, and
counselor assigned to the class. The instructional program was geared toward meeting the
Student's special education needs. The Student was suitably grouped for instructional purposes
with students who had similar needs and abilities. The multi-sensory approach to instruction and
the instructional materials used were well-suited to the Student's needs. The program addressed his
academic issues, social-emotional issues, speech and language issues, sensory processing and
sensory regulation issues, and auditory processing issues. The program also provided the Student
with daily living skills instruction and had a sensory gym available.

    The evidence presented at the hearing overwhelmingly supports the Parents' contention that
the Aaron School was appropriate for the Student and that the Student made meaningful progress
at the school. The program was not, as the DOE contends, overly restrictive. To the contrary, it
provided the Student with the level of that he needed. Based on the testimony and documentary
evidence presented at the hearing, I find that the Parents have met their burden of proof and have
established that the Aaron School was an appropriate placement for the Student for the 2010-2011
school year. The Parents have therefore met the second of the three Burlington/Carter criteria for
tuition reimbursement.

    Although the DOE contends that equitable factors preclude reimbursement, I can find
nothing in the Record to support this contention. The DOE contends that the Parents did not

comply with the IDEA's notice requirements, and that they never intended to enroll the Student in a public school.  It is these factors that the DOE asserts preludes a tuition reimbursement award.

The determination of whether or not equitable factors support a parent's claim for tuition reimbursement hinges, in large part, on whether or not a parent cooperated with the CSE. Tuition reimbursement may be denied when a parent has (by action or inaction) interfered with the CSE evaluation, program development and placement process. A parent's subjective intent, or preference for a nonpublic educational setting, is not relevant on Prong III of the Burlington/Carter analysis.

The appropriate inquiry regarding parental cooperation with the CSE is whether a parent's actions, or inactions, interfered with the CSE's program development and placement process. The Parents in this proceeding fully cooperated with the CSE. There is no evidence indicating that they interfered with or hindered the CSE in any way. The Parents provided the CSE with prompt notice of their disagreement with the CSE's program and placement recommendations. The Parents attended the CSE meeting and shared progress reports and other materials with the CSE. They advised the CSE at the April 2010 meeting that they did not think that a 12:1:1 class would provide the Student with the level of support that he needed.  They were of the view that the Student needed two teachers, rather than a teacher and a paraprofessional, in order to make meaningful educational progress.

Moreover, the Parents promptly responded to the FNR by expressing their interest in visiting the school and by seeking additional information about the school (Parent Exh. D). The Parents clearly advised the CSE that they could not visit the school in August of 2010 because it was closed, that it was their intention to send the Student to the Aaron School until they had an opportunity to determine whether the P.S. 6 placement was appropriate, and that they would be seeking tuition reimbursement (Parent Exh. D).  The CSE did not reply to the Parents's August 18, 2010 letter (Parent Exh. D) or take any actions based on that letter.  As of that point in time, the CSE was on notice that the Parents were not accepting the P.S.6 12:1:1 placement. The Parents wrote to the CSE again after they had the opportunity to visit P.S. 6 and see the proposed class.  In that letter (Parent Exh. E), the Parents clearly set forth their objections to the program and

Findings of Fact and Decision                                                                        12
Case No. 134060

placement. They also noted that their phone calls were not being returned by school staff. The letter included a clear statement indicating that the Parents had determined that the placement was inappropriate, and again advised the CSE that they would be sending the Student to the Aaron School and seeking tuition reimbursement (Parent Exh. E at 2). Once again, the CSE did not reply to the Parents' letter or take any actions to address the issues raised therein.

The Parents provided the CSE with appropriate and timely notice of their rejection of the CSE's recommended program and placement. The DOE's equitable challenge based upon the Parents' alleged failure to provide adequate and timely notice to the CSE must fail. If anything, the DOE staff's repeated failure to return the Parents' telephone calls and the CSE's failure to reply to the Parents' letters tips the equitable scale even further in the Parents' favor.

I also reject the DOE's contention that the tuition reimbursement should be denied on equitable grounds because the Parents never intended to send the Student to a public school. First of all, a paren'ts subjective intent or preference for a nonpublic school does not operate as an equitable bar to reimbursement. Moreover, the DOE's contention regarding the Parents' subjective intent is simply not supported by the Record. Based on my review of the hearing record, which includes my assessments as to witness credibility, I find that the Parents were willing to consider an public school placement for the Student. This was evident in the Father's testimony, and in the letters that the Parents sent to the CSE (Parent Exhs. D and E).

Having considered the DOE's equitable challenges to tuition reimbursement, and having considered the Hearing Record in this case, I find that equitable factors support the Parent's tuition reimbursement claim. As such, the Parents have met the third of the three Burlington/Carter criteria for tuition reimbursement.

Having met all three prongs of the analysis, the Parents are entitled to tuition reimbursement for the cost of the Student's enrollment at the Aaron School for the 2010-2011 school year.

The Aaron School contract and proof of attendance and payment are already in the Hearing Record (Parent Exhs. V, W, and U, respectively). The total cost of the Aaron School placement for the 2010-2011 school year was $45,675.00 (Parent Exh. V). The Parents have paid the full amount

Findings of Fact and Decision                                                                        13
Case No. 134060

that was due to the school (Parent Exh. U), and are entitled to prompt reimbursement.

## ORDER

**IT IS HEREBY**

      **ORDERED** that the Parents are entitled to tuition reimbursement for the cost of the
Student's 2010-2011 placement at the Aaron School; and it is further

      **ORDERED** that the New York City Department of Education is directed to
promptly reimburse the Parents for the cost of the 2010-2011 Aaron School enrollment in the
amount of $45,675.00 by remitting payment in that amount to the Parents within fifteen (15) days
of date hereof; and it is further

      **ORDERED** that there is no need for the Parents to submit any additional
documentation prior to receiving reimbursement.

Dated: September 4, 2012

                           MINDY G. WOLMAN

**PLEASE TAKE NOTICE**

      **Within 35 days of the date of this decision, the parent and/or the Board of Education
of the City of New York  has a right to appeal the decision to the State Review Officer of the
New York State Education Department under Section 4404 of the Education Law and the
Individuals with Disabilities Education Act.**

      **"The notice of intention to seek review shall be served upon the school district not less
than 10 days before service of a copy of the petition for review upon such school district, and
within 25 days from the date of the decision sought to be reviewed.  The petition for review
shall be served upon the school district within 35 days from the date of the decision sought to
be reviewed.  If the decision has been served by mail upon petitioner, the date of mailing and
the four days subsequent thereto shall be excluded in computing the 25- or 35-day period."
(8NYCRR279.2[b])  Failure to file the notice of intention to seek review is a waiver of the
right to appeal this decision.**

      **Directions and sample forms for filing an appeal are included with this decision.
Directions and forms can also be found in the Office of State Review website:
www.sro.nysed.gov/appeals.htm.**

Findings of Fact and Decision                                                                 14
Case No. 134060
_____

### NAMES AND TITLES OF PERSONS WHO APPEARED ON JANUARY 23, 2012

| | | |
|---|---|---|
| JuNisha Carter | Advocate | Parent |
|   (By Telephone) | | |
| Joseph Tillman, Esq. | Attorney | Department of Education |
|   (By Telephone) | | |

### NAMES AND TITLES OF PERSONS WHO APPEARED ON FEBRUARY 21, 2012

| | | |
|---|---|---|
| Scott Cohen, Esq. | Attorney | Parents |
| Joseph Tillman, Esq. | Attorney | Department of Education |

### NAMES AND TITLES OF PERSONS WHO APPEARED ON MAY 1, 2012

| | | |
|---|---|---|
| Z.A. | Father | Parents |
| Scott Cohen, Esq. | Attorney | Parents |
| Joseph Tillman, Esq. | Attorney | Department of Education |
| Jennifer Radden* | Special Education Teacher | Department of Education |
|   (By Telephone) | | |
| Feng Ye* | Special Education Teacher | Department of Education |
|   (By Telephone) | | |

### NAMES AND TITLES OF PERSONS WHO APPEARED ON JUNE 5, 2012

| | | |
|---|---|---|
| Z.A.* | Father | Parents |
| Scott Cohen, Esq. | Attorney | Parents |
| Joseph Tillman, Esq. | Attorney | Department of Education |
| Debra Shepard* | Head of School | Parents |
|   (By Telephone) | | |

### NAMES AND TITLES OF PERSONS WHO APPEARED ON JULY 11, 2012

| | | |
|---|---|---|
| R.A. | Mother | Parents |
| Scott Cohen, Esq. | Attorney | Parents |
| Joseph Tillman, Esq. | Attorney | Department of Education |
| Lauren Kelin* | Teacher | Parents |
|   (By Telephone) | | |

*Testified at Hearing

Findings of Fact and Decision                                                                 15
Case No. 134060

## DOCUMENTS ADMITTED INTO EVIDENCE

### DEPARTMENT OF EDUCATION EXHIBITS

| Exh. | Document Description |
|------|---------------------|
| 1. | OMITTED |
| 2. | Department's Due Process Response, 7/19/11, 4.. |
| 3. | Petitioners' Amended Complaint, 11/18/11, 5 pp. |
| 4. | Department's (Second) Due Process Response, 11/22/11, 4 pp. |
| 5. | Department Contact Sheet, various dates, 1 p. |
| 6. | Department C-2 Consent for Reevaluation/Triennial Evaluation, 11/13/09, 1 p. |
| 7. | Department Notice of IEP Meeting" Reevaluation/Annual Review, 3/20/10, 1 p. |
| 8. | OMITTED |
| 9. | Department CCP9 Minutes of CSE Meeting, 4/19/10, 1 p. |
| 10. | Department Notice of Recommended Deferred Placement; Annual Review or Reevaluation, 4/19/10, 1 p. |
| 11. | Department CCP5 SBST Case Material Checklist, 2010-2011, 1 p. |
| 12. | OMITTED |
| 13. | Classroom Observation, 12/9/09, 3 pp. |
| 14. | OMITTED |
| 15. | DOE Individualized Education Program, 7/15/09, 10 pp. |
| 16. | OMITTED |
| 17. | OMITTED |
| 18. | Aaron School Occupational Therapy Plan, January 2010, 2 pp. |
| 19. | WITHDRAWN FROM EVIDENCE |
| 20. | Final Notice of Recommendation, 8/6/11, 1 p. |
| 21. | OMITTED |
| 22. | OMITTED |

### PARENT EXHIBITS

| Exh. | Document Description |
|------|---------------------|
| A. | Impartial Hearing Request , /13/11, 5 pp. |
| B. | OMITTED |
| C. | Individualized Education Program, 4/19/10, 19 pp. |
| D. | Letter to Nancy Funke w/ fax transmission report, 8/18/10, 2 pp. |
| E. | Letter to Nancy Funke w/ fax transmission report, 10/27/10, 3 pp. |
| F. | Letter to Feng Ye w/ fax transmission report, 2/11/10, 2 pp. |
| G. | Letter to Feng Ye w/ fax transmission report, 4/13/10, 2 pp. |
| H. | Letter to Feng Ye, w/ fax transmission report, 4/16/10, 2 pp. |
| I. | Psychoeducational Evaluation, 2/21/09, 15 pp. |

Findings of Fact and Decision                                                                16
Case No. 134060

J.      Aaron Speech and Language Therapy Plan, October 2009, 2 pp
K.      Annual Fall Report,2009-2010, November 2009, 7 pp.
L.      Aaron Mid-Year Report, 2009-2010, February 2010, 9 pp.
M.      Aaron Spring Report, 2009-2010, May 2010, 10 pp.
N.      Aaron Speech and Language Therapy Progress Report, May 2010, 6 pp.
O.      Aaron Occupational Therapy Progress Report, May 2010, 4 pp.
P.      Aaron Speech and Language Therapy Plan, October 2010, 2 pp.
Q.      Aaron Occupational Therapy Plan, October 2010, 2 pp.
R.      Aaron Fall Report, 2010-2011, 8 pp.
S.      Aaron Mid-Year Report, 201-2011, February 2011, 10 pp.
T.      Observation, 12/01/10, 2 pp.
U.      Affidavit dated 2/9/1 and Cancelled Checks with various dates, 9 pp.
V.      Enrollment Contract, 2010-2011, 9/1/10, 2 pp.
W.      Attendance Report, 2010-2011, 2/9/11, 1 p.
X.      Class Schedule, 2010-2011, 1 p.
Y.      Aaron School Program Description, undated, 12 pp.
Z.      OMITTED
AA.     Aaron Spring Report, 2010-2011, 10 pp.
BB.     Subpoenas, 2/21/10, 10 pp.
CC.     Schedules, undated, 2 pp.
DD.     IEP #1, 1/26/10, 11 pp.
EE.     IEP #2, 3/24/10, 13 pp.
FF.     IEP #3, 3/26/10, 18 pp.
GG.     IEP #4, 5/12/10, 14 pp.
HH.     IEP #5, 6/2/10, 12 pp.
II.     IEP #6, 6/18/10, 12 pp.
JJ.     IEP #7, 6/4/10, 12 pp.
KK.     Class Profile, September 2010, 3 pp.


**IHO EXHIBITS**

| **Exh.** | **Document Description** |
| --- | --- |
| I. | Pre-Hearing Conference Summary, 1/23/12, 1 p. |
| II. | Email from IHO re Compliance Date, 1/23/12, 1 p. |
| III. | Email from IHO re Compliance Date, 2/21/12, 1 p. |
| IV. | Email from IHO re Compliance Date, 3/6/12, 1 p. |
| V. | Email from IHO re Compliance Date, 5/2/12, 1 p. |
| VI. | Email from IHO re Compliance Date, 5/3/12, 1 p. |
| VII. | Email from IHO re Compliance Date, 6/5/12, 1 p. |
| VIII. | Email from IHO re Compliance Date, 7/11/12, 1 p. |
| IX. | The Department's Post-Hearing Closing Arguments, 8/13/12, 16 pp. |
| X. | [Parents'] Memorandum of Law in Closing Statement, 8/13/12, 26 pp. |