# EXHIBIT C

# FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 140020 |
| Student's Name: | D███ A███ |
| Date of Birth: | May 26, 1999 |
| District: | 2 |
| Hearing Requested By: | Parent |
| Date of Hearing: | October 9, 2012<br>October 12, 2012<br>October 18, 2012<br>December 13, 2012 |
| Actual Record Close Date: | January 14, 2013 |
| Hearing Officer: | James McKeever, Esq. |

Hearing Officer's Findings of Fact and Decision                                                              1

Case No.: 140020

## NAMES AND TITLES OF PERSONS WHO APPEARED ON OCTOBER 9, 2012

For the Student
SCOTT COHEN, Attorney
Z███ A███████ Parent

For the Department of Education
IRENE NISIRIOS, Attorney

## NAMES AND TITLES OF PERSONS WHO APPEARED ON OCTOBER 12, 2012

For the Student
LAUREN BAUM, ESQ., Attorney for Parent
Z███ A███████ Parent

For the Department of Education
IRENE NISIRIOS, Attorney
JENESSA POLSINELLI, Teacher

## NAMES AND TITLES OF PERSONS WHO APPEARED ON OCTOBER 18, 2012

For the Student
SCOTT COHEN, Attorney
Z███ A███████ Parent

For the Department of Education
IRENE NISIRIOS, Attorney
STEVEN ABRAMOWITZ, Psychologist *(via telephone)*

## NAMES AND TITLES OF PERSONS WHO APPEARED ON DECEMBER 13, 2012

For the Student
SCOTT COHEN, Attorney
Z███ A███████ Parent
DEBORAH BLENMAN, Educational Supervisor, Aaron School *(via telephone)*

For the Department of Education
IRENE NISIRIOS, Attorney

Hearing Officer's Findings of Fact and Decision                                                                 2

Case No.: 140020

PROCDURAL BACKGROUND

I was appointed to the matter on July 31, 2012. The Resolution Period expired on August 29, 2012. A Prehearing Conference was held on September 20, 2012.

On October 12, 2012, the parent and the DOE requested a 30-day extension of the compliance date based on the availability of their witnesses. I determined that there had been no prior requests for an extension and that the extension would have no impact on the student's educational interest because student was currently placed in full-time educational facility and because this is a tuition reimbursement case for 2012-2013 school year. I was also advised that there are no financial or other detrimental consequences likely to be suffered by granting the within request. As such, pursuant to NYCRR 200.5(j)(5)(ii), the request was granted and the compliance date was extended to November 14, 2012.

On November 14, 2012, the parent and the DOE requested a 30-day extension of the compliance date based on the availability of their witnesses. I determined that although there had been a prior request for an extension, a second extension would have no impact on the student's educational interest because student was currently placed in full-time educational facility and because this is a tuition reimbursement case for 2012-2013 school year. I was also advised that there are no financial or other detrimental consequences likely to be suffered by granting the within request. As such, pursuant to NYCRR 200.5(j)(5)(ii), the request was granted and the compliance date was extended to December 14, 2012.

On December 13, 2012, the parent and the DOE requested a 30-day extension of the compliance date in order to receive the final transcript and submit post-hearing briefs. I determined that although there had been prior requests for extensions, another extension would have no impact on the student's educational interest because student was currently placed in full-time educational facility and because this is a tuition reimbursement case for 2012-2013 school year. I was also advised that there are no financial or other detrimental consequences likely to be suffered by granting the within request. As such, pursuant to NYCRR 200.5(j)(5)(ii), the request was granted and the compliance date was extended to January 13, 2012.

Hearing Officer's Findings of Fact and Decision                                           3

Case No.: 140020

    On January 4, 2012, the parent and with the consent of DOE requested a 30-day extension of the compliance date in order to have more time to prepare their post-hearing brief. I determined that although there had been prior requests for extensions, another extension would have no impact on the student's educational interest because student was currently placed in full-time educational facility and because this is a tuition reimbursement case for 2012-2013 school year. I was also advised that there are no financial or other detrimental consequences likely to be suffered by granting the within request. As such, pursuant to NYCRR 200.5(j)(5)(ii), the request was granted and the compliance date was extended to February 11, 2012.

FINDINGS OF FACT

    Based upon the evidence adduced at the Due Process Hearing, I make the following findings of fact:

    The Student is a 13-year-old boy classified as a child with a speech and language impairment (See, Individualized Education Plan (IEP), dated June 1, 2011 at Exhibit 8). The Student's deficits include expressive and respective language delays as well as attention and executive functioning delays (Exhibit 8, N). The Student also has diagnosis of Attention Deficit hyperactivity Disorder" (ADHD) (Exhibit 8).

    On June 1, 2011, the DOE's Committee of Special Education (CSE) generated an IEP that recommended placement in a 12:1:1 special class for all classes in a community school with related services of speech and language therapy occupational therapy and counseling for the 2011-2012 school year (Exhibit 8, W).

    At the time of the IEP meeting in June of 2011, the Student, who was entering the 6th grade in September 2011 for the 2011-2012 school year, was functioning at mid-4th grade level in reading and a mid-3rd grade level in math year, which placed him approximately two years behind grade level in reading and three years behind grade level in math (Exhibit 8, page 3, Tr. 138-139). The IEP developed in June 2011 provided for a multisensory approach, manipulatives, a graphic organizer, teacher modeling, role and guided practice. The IEP also provided for repetitive, visual cues, chunking of information as well as a consistent scheduled and sensory breaks to address the Student's executive functioning, impulsivity and attention delays (Exhibit 8).

Hearing Officer's Findings of Fact and Decision                                            4

Case No.: 140020

The Student has sensory integration deficits that require the implementation of a sensory diet, as well as social deficits that require support in conversations with his peers. (Tr. 236).

The DOE's version of the June 2011 IEP had additional handwritten notes on page four of the IEP, that are not on the IEP that was provided to the parent. The notes state that the Student requires "frequent breaks" and list some "sensory tools" such as "sugar-free gum" "balls" and a "visual timer," among others (Exhibits 8 and W).

The goals contained in the IEP were generated with the help of the participants from the Private School who were present at the meeting (Tr. 136-38). However, the DOE School Psychologist testified that the Private School did not permit the Student's related service providers to participate at the IEP meeting (Tr. 144).

On or about July 14, 2011, the DOE issued a Final Notice of Recommendation ("FNR") for the Student to attend JHS 104 located at 330 East 21st Street, New York, New York (Exhibit 7). The Student was group with students whose functioning abilities in reading and math ranged from 3rd grade to 4th grade (Tr. 92).

The classroom teacher from JHS 104, testified that the Student would have been placed in her class, as it was the only 12:1:1 class for a 6th grade student at JHS 104 for the 2011-12 school year and that her class consisted of English, math, science, social studies and then the Student's were mainstreamed in general education classed for all other subjects and lunch (Tr. 62, 64). The general education classes had at least 20 students, except for gym, which could have 40 or more students. The general education classes were not taught teachers certified in special education (Tr. 79).

By letter dated, August 23, 2011, the parents notified the CSE that they wanted more information about the school and the class recommended on the FNR and that they would continue to send the Student at the Private School and seek tuition reimbursement until they received more information about the proposed placement (Exhibit H). The DOE did not respond to the parent's request for more information (Tr. 299).

On February 27, 2012, the parents notified the CSE in writing that they visited the JHS 104 on December 23rd 2011, after several attempt to do so before (Exhibit E) and

Hearing Officer's Findings of Fact and Decision                                      5

Case No.: 140020

that they did not find it appropriate because there was too many Student's in the class (Tr. 297; Ex. E).

The parents filed their due process complaint ("DPC") on July 31, 2012. (Exhibit 9). The DOE filed a response to the parent's DPC on August 8, 2012 (Exhibit 10).

The DPC alleges, among other things, that the proposed class was inappropriate for the Student because it could not provide the level of support to meet the Student's needs (Exhibit A).

The Student's class at the Private School consists of 14 students with two certified special education teachers in the classroom (Tr. 234). The school employs a language-based curriculum that is modified based on the specific learning styles of each child. (Ex. V). The age range of the student's in the class was 11 to 13 years old. (Tr. 234). The Student's teachers provided 1:1 attention and modified instruction (Tr. 240). The Student's sensory issues were address with a sensory diet that included breaks and the use of sensory tools (Tr. 240). The Student's social issues were address with a social skills program that was embedded in the curriculum, and the teachers paired the Student with specific students to have reciprocal conversations throughout the day (Tr. 241). It was reported that during the subject school year the Student was learning and demonstrating progress "across the board." (Tr. 302).

## Credibility Findings

I find that all of the witnesses who testified at the impartial hearing, testified in a credible manner.

## CONCLUSION OF LAW

Two purposes of the Individuals with Disabilities Education Act (IDEA) (20 U.S.C. §§ 1400-1482) are (1) to ensure that students with disabilities have available to them a FAPE that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living; and (2) to ensure that the rights of students with disabilities and parents of such students are protected (20 U.S.C. § 1400[d][1][A]-[B]; see generally Forest Grove v. T.A., 129 S. Ct. 2484, 2491 [2009]; Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 [1982]). A FAPE is offered to a student when (a) the board of education complies with

Hearing Officer's Findings of Fact and Decision                                   6

Case No.: 140020

the procedural requirements set forth in the IDEA, and (b) the IEP developed by its CSE through the IDEA's procedures is reasonably calculated to enable the student to receive educational benefits (Rowley, 458 U.S. at 206-07; Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 [2d Cir. 2005]).

A board of education may be required to reimburse parents for their expenditures for private educational services obtained for a student by his or her parents, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parents were appropriate, and equitable considerations support the parents' claim (Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 [1993]; Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 369-70 [1985]). In Burlington, the Court found that Congress intended retroactive reimbursement to parents by school officials as an available remedy in a proper case under the IDEA (471 U.S. at 370-71; Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 111 [2d Cir. 2007]; Cerra, 427 F.3d at 192 [2d Cir. 2005]). "Reimbursement merely requires [a district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance" had it offered the student a FAPE (Burlington, 471 U.S. at 370-71; see 20 U.S.C. § 1412[a][10][C][ii]; 34 C.F.R. § 300.148).

The DOE bears the burden of proof in due process hearings brought under the IDEA in New York State (See, N.Y. Educ. Law Section 4404). I find that based on the following, the DOE failed to meet its burden of proof with respect to demonstrating that the Student was offered a FAPE for the 2011-2012 school year.

Here, the evidence shows that during the 2011-2012 school year the Student a 13-year-old boy classified as a child with a speech and language impairment with deficits in expressive and respective language and executive functioning as well as a diagnosis of ADHD (Exhibit 8, N).

The June 1, 2011 IEP recommended placement in a 12:1:1 special class in a community school with related services of speech, OT and counseling for the 2011-2012 school year (Exhibit 8, W). Significantly, the IEP mandated that the Student be placed in a 12:1:1 special class environment for all areas of instruction (Exhibit 8). However, the testimony of the teacher from the classroom offered to the Student at JHS 104, who

confirmed that the Student would have been placed in her class because her 12:1:1 class was the only 12:1:1 class for the 6th grade s at JHS 104 for the 2011-12 school year, stated that her students only remained in a 12:1:1 program for English, math, science, social studies, (Tr. 62, 64). Significantly, the students in her 12:1:1 class would then attend general education classes for all other subjects. The evidence shows that the general education classes had at least 20 students per class (Tr. 64, 78,) and that the general education classes were not taught teachers certified in special education (Tr. 79). Accordingly, based on these facts, I find that that the evidence demonstrates that the DOE failed to offer the Student a program that conformed to the Student's IEP generated on June 1, 2011 and resulted in a denial of FAPE to the Student for the 2011-2012 school 8 N.Y.C.R.R. § 200.4(e)(7). Additionally, I find that not providing the Student with approximately 10 periods per week of instruction in the 12:1:1 was more than a de minimis failure in the DOE's ability to implement Student's IEP. D.D-S. v. Southold Union Free Sch. Dist., No. 09 Civ. 5026, 2011 U.S. Dist. LEXIS 100809, at *13 (E.D.N.Y. Sept. 2, 2011). Further, I find that the holding in R.E. v. New York City Dept. of Educ., 694 F.3d 167, 195 (2d Cir. 2012) does not support a conclusion to the contrary based on "speculative" evidence, because the evidenced in this case confirmed that had the Student attended the public school offered by the DOE, the Student would not have received instruction in a 12:1:1 class throughout the school day. To the contrary, and as indicated above, for almost one third of the school day, the Student would have attended general education classes, which was not discussed at the IEP meeting in June of 2011 and not recommended on the finalized IEP. Accordingly, based on these facts, I find that the DOE failed to meet its burden of proof with respect to demonstrating that the Student was offered a FAPE for the 2011-2012 school year in that the DOE's assigned placement and/or class did not conform to the mandates in the Student's IEP. Additionally, although the DPC did not specifically alleged that the Student was denied a FAPE because the assigned class did not conform to the Student's IEP, I find that the DOE had sufficient notice of this issue because the DPC does state that the "offered class at JHS 104 did not provide the level of individual attention and support from appropriate trained educators…" and that "[d[uring the parent's visit, she was shown a 12:1:1 6th grade class

Hearing Officer's Findings of Fact and Decision                                    8

Case No.: 140020

that was watching a move with a large number of <u>other</u> 6th grade students" and that "[t[he class was very crowded" (Exhibit A, page 3). Thus, although the DOE contends that this decision must be limited to the four corners of the DPC, I find that the DOE had adequate notice of this issue. Moreover, the evidence shows that the FNR that the DOE issued to the parent did not disclose to the parent that the assigned class was only a partial 12:1:1 class and that the Student would be mainstreamed for all classes outside English, math, science and social studies (Exhibit 7). Additionally, upon receipt of the FNR, the parent promptly wrote to the DOE asking for more information about the number of students in the assigned class and the actual staffing ratio of the class because this information was not included on the FNR. Thereafter, it is undisputed that the DOE failed to respond to the parent's request for information about the assigned class (Exhibit H, Tr. 299). Accordingly, in addition to the reasoning set forth above, I find that the DOE cannot benefit by a strict interpretation of the "four corners rule," in this case, when they failed to provide the parent with an accurate description of the assigned class and failed to respond to the parent's request for same.

With respect to the parent's assertion that the OT and Speech goals were inappropriate, the evidence shows that the IEP utilized the related service progress reports provided by the parents in generating the Student's OT and speech goals and that the Private School did not permit the Student's then current related service providers to participate in the IEP meeting. Additionally, no other OT or speech report was offered into evidence to support the parent's contention that the related services goals were inappropriate. As such, I find that this did not result in a denial of FAPE.

Also, I find that the goals and the present levels of performance contained in the IEP were appropriate for the Student as the evidence shows that this information was provided from the Private School teachers who participated in the IEP meeting and based on the Student's mid-year report from the Private School (Tr. 136-38; 144, 147-48). Further, I find that the DOE has demonstrated that the recommended program in the IEP would have provided Student with appropriate and similarly-functioning peers as the functioning levels of the Students in the proposed class were within appropriate range 8 N.Y.C.R.R. § 200.6(a)(3)(i)–(ii)).  Additionally, the parent's allegation that the Student

was denied a FAPE because a general education teacher was not present at the IEP is unpersuasive in that the evidence shows that the Student was not considered for placement in a general education program (Exhibit W).

Lastly, I have considered all of the other claims raised by the parent against the DOE and I find that they do not support any additional findings with respect to a denial of FAPE.

Parent's Placement at the Private School:

A private school placement must be "proper under the Act" (Carter, 510 U.S. at 12, 15; Burlington, 471 U.S. at 370), i.e., the private school offered an educational program which met the student's special education needs (see Gagliardo, 489 F.3d at 112, 115; Walczak, 142 F.3d at 129; Matrejek v. Brewster Cent. Sch. Dist., 471 F. Supp. 2d 415, 419 [S.D.N.Y. 2007] aff'd, 2008 WL 3852180 [2d Cir. Aug. 19, 2008]). A parent's failure to select a program approved by the State in favor of an unapproved option is not itself a bar to reimbursement (Carter, 510 U.S. at 14). The private school need not employ certified special education teachers or have its own IEP for the student (Carter, 510 U.S. 7; Application of the Bd. of Educ., Appeal No. 08-085; Application of the Dep't of Educ., Appeal No. 08-025; Application of the Bd. of Educ., Appeal No. 08-016; Application of the Bd. of Educ., Appeal No. 07-097; Application of a Child with a Disability, Appeal No. 07-038; Application of a Child with a Disability, Appeal No. 02-014; , 458 U.S. at 188-89). Application of a Child with a Disability, Appeal No. 01-105). Parents seeking reimbursement "bear the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate" (Gagliardo, 489 F.3d at 112; see M.S. v. Bd. of Educ., 231 F.3d 96, 104 [2d Cir. 2000]). "Subject to certain limited exceptions, 'the same considerations and criteria that apply in determining whether the [s]chool [d]istrict's placement is appropriate should be considered in determining the appropriateness of the parents' placement...'" (Gagliardo, 489 F.3d at 112; Frank G. v. Bd. of Educ., 459 F.3d at 364 [2d Cir. 2006] [quoting Rowley, 458 U.S. at 207 and identifying exceptions]). Parents need not show that the placement provides every special service necessary to maximize the student's potential (Frank G., 459 F.3d at 364-65). When determining whether the parents' unilateral placement is appropriate, "[u]ltimately,

<>Hearing Officer's Findings of Fact and Decision                                                  10

Case No.: 140020

the issue turns on" whether that placement is "reasonably calculated to enable the child to receive educational benefits" (Frank G., 459 F.3d at 364; see Gagliardo, 489 F.3d at 115 [citing Berger v. Medina City Sch. Dist., 348 F.3d 513, 522 [6th Cir. 2003] [stating "evidence of academic progress at a private school does not itself establish that the private placement offers adequate and appropriate education under the IDEA"]). A "private placement is only appropriate if it provides 'education instruction specifically designed to meet the unique needs of a handicapped child'" (Gagliardo, 489 F.3d at 115 [emphasis in original], citing Frank G., 459 F.3d at 365 quoting Rowley.

The Second Circuit has set forth the standard for determining whether parents have carried their burden of demonstrating the appropriateness of their unilateral placement.

> No one factor is necessarily dispositive in determining whether parents' unilateral placement is reasonably calculated to enable the child to receive educational benefits. Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs. To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction.

(Gagliardo, 489 F.3d at 112; see Frank G., 459 F.3d at 364-65).

The IDEA directs that, in general, an impartial hearing officer's decision must be made on substantive grounds based on a determination of whether the student received a FAPE (20 U.S.C. § 1415[f][3][E][i]). The burden of proof is on the school district during an impartial hearing, except that a parent seeking tuition reimbursement for a unilateral placement has the burden of proof regarding the appropriateness of such placement (Educ. Law § 4404[1][c]; see M.P.G. v. New York City Dep't of Educ., 2010 WL 3398256, at *7 [S.D.N.Y. Aug. 27, 2010]).

Hearing Officer's Findings of Fact and Decision                          11

Case No.: 140020

I find that the evidence presented at the impartial hearing demonstrates that the parents' placement of the Student at the Private School was appropriate. Specially, I find that the evidence shows that the Private School provided direct and specialized educational instruction that was specifically designed to meet the unique educational needs of the Student (Gagliardo, 489 F.3d at 112; see Frank G., 459 F.3d at 364-65).

As indicated above, during the subject school year, the Student was a 13-year-old boy classified as a child with a speech and language impairment (See, Individualized Education Plan (IEP), dated June 1, 2011 at Exhibit 8). The Student deficits included expressive and receptive language delays as well as attention and executive functioning delays and ADHD (Exhibit 8, N).

The Student's class at the Private School consists of 14 students with two certified special education teachers in the classroom (Tr. 234). The school employs a language-based curriculum that is modified based on the specific learning styles of each child. (Ex. V). The age range of the student's in the class was 11 to 13 years old. (Tr. 234). The Student's teachers provided 1:1 attention and modified instruction (Tr. 240). The Student's sensory issues were addressed with a sensory diet that included breaks and the use of sensory tools (Tr. 240). The Student's social issues were address with a social skills program that was embedded in the curriculum, and the teachers paired the Student with specific students to have reciprocal conversations throughout the day (Tr. 241). It was reported that during the subject school year the Student was learning and demonstrating progress "across the board." (Tr. 302).

Accordingly, based on these facts, I find that the parent has met her burden of demonstrating the appropriateness of the Private School's program for the Student.

Equities:

Nothing in the record suggests that the parents failed to cooperate with the CSE and the evidence demonstrates that the parents provided the DOE with the requisite notice of the students' removal from public school prior to the student's placement at the Private School (Exhibits H, E). (20 U.S.C. § 1412[a][10][C][iii][I]; see 34 C.F.R. § 300.148[d][1]). As such, I find that the parent is entitled to reimbursement of tuition costs for the Private School. Although the DOE contends that the parents should be denied

Case No.: 140020

reimbursement because they did not have a "genuine" interest in sending the Student to the public school, the parent testified, credibly, that has the DOE offered an appropriate placement the Student would have attended a public school (Tr. 291). As such, I find that the DOE failed to demonstrate that the parent acted unreasonably N.R. ex rel. T.R. v. Dep't of Educ. of City Sch. Dist. of City of New York, 2009 WL 874061, at *7 (S.D.N.Y. March 31, 2009).

### ORDERED

The Department of Education shall reimburse the parent for the cost of the tuition paid to the Private School for the 2011-2012 school year upon proof of payment of same.
Dated: January 30, 2013

JAMES MCKEEVER, ESQ.
Impartial Hearing Officer

JM:jj

Hearing Officer's Findings of Fact and Decision                                      13

Case No.: 140020

## PLEASE TAKE NOTICE

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed. The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed. If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b]) Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.

Hearing Officer's Findings of Fact and Decision                                    14

Case No.: 140020

## DOCUMENTATION ENTERED INTO THE RECORD

### PARENT

| | |
|---|---|
| A | Hearing Request, 7/31/12, 6 pp. |
| B | Due Process Response, 8/8/12, 3 pp. |
| C | Resolution Response Form, 8/13/12, 2 pp. |
| D | IEP, 4/19/10, 19 pp. |
| E | Letter, 2/27/12, 3 pp. |
| F | NYC School Survey, 2010/2011, 16 pp. |
| G | NYC School Survey, 2011/2012, 19 pp. |
| H | Letter, 8/23/11, 2 pp. |
| I | Letter, 4/12/11, 2 pp. |
| J | Letter, 2/24/11, 2 pp. |
| K | Letter, 12/3/10, 2 pp. |
| L | Evaluation Consent Form, 11/5/10, 1 p. |
| M | Report Card from Aaron School, 5/2012, 1 p. |
| N | Aaron School Spring Report, 5/2012, 11 pp. |
| O | Aaron School Mid Year Report, 2/2012, 9 pp. |
| P | Aaron School Fall Report, 11/2012, 7 pp. |
| Q | Affidavit, 4/18/12, 1 p. |
| R | Canceled Checks/Proof of Payment, Various Dates, 6 pp. |
| S' | Enrollment Contract, 2/9/11, 2 pp. |
| T | Class Schedule, 2011/2012, 1 p. |
| U | Attendance Report, 2011/2012, 1 p. |
| V | Program Description, Aaron School, Undated 10 pp. |
| W | IEP, 6/1/11, 9 pp. |

### DEPARTMENT OF EDUCATION

| | |
|---|---|
| 1 | Spring Report, Aaron School, 5/2011, 10 pp. |
| 2 | DOE Class Observation, 12/1/10, 2 pp. |
| 3 | CSE Summary of a Contact Sheet, Undated, 1 p. |

Hearing Officer's Findings of Fact and Decision                                    15

Case No.: 140020

| | |
|---|---|
| 4 | CSE Meeting Minutes, 6/1/11, 1 p. |
| 5 | Speech and Language Report, 10/2010, 6 pp. |
| 6 | OT Report, Aaron School, 10/2010, 6 pp. |
| 7 | FNR, 7/14/2011, 1 p. |
| 8 | IEP, 6/11/2011, 19 pp. |
| 9 | Due Process Complaint, 7/31/12, 3 pp. |
| 10 | Due Process Response from DOE, 8/8/12, 3 pp. |
| 11 | Notice of IEP Meetings, Spring of 2011, 3 pp. |
| 12 | Mid-Year Report, Aaron School, 2010-2011, 10 pp. |

## IMPARTIAL HEARING OFFICER

| | |
|---|---|
| I | Ext. Info |
| II | Ext. Info |
| III | Ext. Info |
| IV | Ext. Info |
| V | DOE Brief |
| VI | Parent Brief |