# EXHIBIT D



# The University of the State of New York

## The State Education Department
### State Review Officer
www.sro.nysed.gov

No. 13-036

Application of the NEW YORK CITY DEPARTMENT OF EDUCATION for review of a determination of a hearing officer relating to the provision of educational services to a student with a disability

**Appearances:**

Courtenaye Jackson-Chase, Special Assistant Corporation Counsel, attorneys for petitioner, Gail M. Eckstein, Esq., of counsel

Law Offices of Lauren A. Baum, PC, attorneys for respondents, Scott M. Cohen, Esq., of counsel

## DECISION

### I. Introduction

This proceeding arises under the Individuals with Disabilities Education Act (IDEA) (20 U.S.C. §§ 1400-1482) and Article 89 of the New York State Education Law. Petitioner (the district) appeals from the decision of an impartial hearing officer (IHO) which found that it failed to offer an appropriate educational program to respondents' (the parents') son and ordered it to reimburse the parents for their son's tuition costs at the Aaron School for the 2011-12 school year. The parents' cross-appeal from the IHO's finding that the student would have been appropriately grouped at the assigned public school site. The appeal must be sustained. The cross-appeal must be dismissed.

### II. Overview—Administrative Procedures

When a student in New York is eligible for special education services, the IDEA calls for the creation of an individualized education program (IEP), which is delegated to a local Committee on Special Education (CSE) that includes, but is not limited to, parents, teachers, a school psychologist, and a district representative (Educ. Law § 4402; see 20 U.S.C. § 1414[d][1][A]-[B]; 34 CFR 300.320, 300.321; 8 NYCRR 200.3, 200.4[d][2]). If disputes

occur between parents and school districts, incorporated among the procedural protections is the opportunity to engage in mediation, present State complaints, and initiate an impartial due process hearing (20 U.S.C. §§ 1221e-3, 1415[e]-[f]; Educ. Law § 4404[1]; 34 CFR 300.151-300.152, 300.506, 300.511; 8 NYCRR 200.5[h]-[l]).

New York State has implemented a two-tiered system of administrative review to address disputed matters between parents and school districts regarding "any matter relating to the identification, evaluation or educational placement of a student with a disability, or a student suspected of having a disability, or the provision of a free appropriate public education to such student" (8 NYCRR 200.5[i][1]; see 20 U.S.C. § 1415[b][6]-[7]; 34 CFR 300.503[a][1]-[2], 300.507[a][1]). First, after an opportunity to engage in a resolution process, the parties appear at an impartial hearing conducted at the local level before an IHO (Educ. Law § 4404[1][a]; 8 NYCRR 200.5[j]). An IHO typically conducts a trial-type hearing regarding the matters in dispute in which the parties have the right to be accompanied and advised by counsel and certain other individuals with special knowledge or training; present evidence and confront, cross-examine, and compel the attendance of witnesses; prohibit the introduction of any evidence at the hearing that has not been disclosed five business days before the hearing; and obtain a verbatim record of the proceeding (20 U.S.C. § 1415[f][2][A], [h][1]-[3]; 34 CFR 300.512[a][1]-[4]; 8 NYCRR 200.5[j][3][v], [vii], [xii]). The IHO must render and transmit a final written decision in the matter to the parties not later than 45 days after the expiration period or adjusted period for the resolution process (34 CFR 300.510[b][2], [c], 300.515[a]; 8 NYCRR 200.5[j][5]). A party may seek a specific extension of time of the 45-day timeline, which the IHO may grant in accordance with State and federal regulations (34 CFR 300.515[c]; 8 NYCRR 200.5[j][5]). The decision of the IHO is binding upon both parties unless appealed (Educ. Law § 4404[1]).

A party aggrieved by the decision of an IHO may subsequently appeal to a State Review Officer (SRO) (Educ. Law § 4404[2]; see 20 U.S.C. § 1415[g][1]; 34 CFR 300.514[b][1]; 8 NYCRR 200.5[k]). The appealing party or parties must identify the findings, conclusions, and orders of the IHO with which they disagree and indicate the relief that they would like the SRO to grant (8 NYCRR 279.4). The opposing party is entitled to respond to an appeal or cross-appeal in an answer (8 NYCRR 279.5). The SRO conducts an impartial review of the IHO's findings, conclusions, and decision and is required to examine the entire hearing record; ensure that the procedures at the hearing were consistent with the requirements of due process; seek additional evidence if necessary; and render an independent decision based upon the hearing record (34 CFR 300.514[b][2]; 8 NYCRR 279.12[a]). The SRO must ensure that a final decision is reached in the review and that a copy of the decision is mailed to each of the parties not later than 30 days after the receipt of a request for a review, except that a party may seek a specific extension of time of the 30-day timeline, which the SRO may grant in accordance with State and federal regulations (34 CFR 300.515[b], [c]; 8 NYCRR 200.5[k][2]).

### III. Facts and Procedural History

The parties' familiarity with the detailed facts and procedural history of the case and the IHO's decision is presumed and will not be recited here in great detail.[1] Briefly, the student has

---

[1] Any additional facts necessary to the disposition of the parties' arguments will be set forth below as necessary for resolution of the issues presented in this appeal.

received a diagnosis of an attention deficit hyperactivity disorder (ADHD) (Parent Ex. W at p. 7). With respect to the student's educational history, the student has attended the Aaron School since the 2009-10 school year (see Parent Ex. N at p. 1).[2]

The CSE convened on June 1, 2011, to formulate the student's IEP for the 2011-12 school year (Parent Ex. W). Finding that the student remained eligible for special education and related services as a student with a speech or language impairment, the June 2011 CSE recommended a 12:1+1 special class placement at a community school with related services consisting of two 45-minute sessions per week of individual occupational therapy (OT), one 45-minute session per week of speech-language therapy in a group (5:1), one 45-minute session per week of individual speech-language therapy, and counseling (id. at pp. 1, 18).[3]

By final notice of recommendation (FNR) dated July 14, 2011, the district summarized the special education and related services recommended in the June 2011 IEP, and identified the particular public school site to which the district assigned the student to attend for the 2011-12 school year (Dist. Ex. 7). After visiting the assigned public school site to which the district assigned the student to attend for the 2011-12 school year, the parents had concerns and, as a result, notified the district of their intent to unilaterally place the student at the Aaron School (Parent Ex. E at pp. 1-2).[4] In a due process complaint notice, dated July 31, 2012, the parents alleged that the district failed to offer the student a free appropriate public education (FAPE) for the 2011-12 school year, challenging the adequacy of the June 2011 IEP and the assigned public school site (see Parent Ex. A).

On September 20, 2012, the IHO conducted a prehearing conference, and on October 9, 2012, the parties proceeded to an impartial hearing, which concluded on December 13, 2012 after four days of proceedings (Tr. pp. 1-320). In a decision dated January 30, 2013, the IHO determined that the district failed to offer the student a FAPE for the 2011-12 school year, the Aaron school was an appropriate unilateral placement, and that equitable considerations weighed in favor of the parents' requested relief (IHO Decision at pp. 5-12). More specifically, the IHO found that the district did not offer the student a FAPE because it would not be able to implement the June 2011 IEP at the assigned public school site based on testimony from the assigned school teacher during the impartial hearing (id. at pp. 6-8). However, the IHO also found that present levels of performance and annual goals in the June 2011 IEP were appropriate and that the student would have been placed with "similarly functioning peers" at the assigned public school site (id. at p. 8).[5] As relief, the IHO ordered the district to reimburse the parents for the cost of the student's tuition at the Aaron School for the 2011-12 school year (id. at p. 12).

---

[2] The Commissioner of Education has not approved the Aaron School as a school with which school districts may contract for the instruction of students with disabilities (see 8 NYCRR 200.1[d]; 200.7).

[3] The student's eligibility for special education programs and related services as a student with a speech or language impairment is not in dispute (see 34 CFR 300.8[c][11]; 8 NYCRR 200.1[zz][11]).

[4] The parents entered into an enrollment contract with the Aaron School on February 9, 2011 for the student's attendance during the 2011-12 school year (Parent Ex. S).

[5] The parents did not appeal the IHO's determinations that the present levels of performance and annual goals in the June 2011 IEP were appropriate. Accordingly, these determinations have become final and binding on the parties (34 C.F.R. 300.514[a]; 8 NYCRR 200.5[j][5][v]; see C.H. v. Goshen Cent. Sch. Dist., 2013 WL 1285387, at *9-*10 [S.D.N.Y. Mar. 28, 2013]; M.Z. v. New York City Dep't of Educ., 2013 WL 1314992, at *6, *10 [S.D.N.Y. Mar. 21, 2013]).

## IV. Appeal for State-Level Review

The parties' familiarity with the particular issues for review on appeal in the district's petition and the parents' answer thereto is also presumed and will not be recited here. The following issues presented on appeal must be resolved in order to render a decision in this case: (1) whether the June 2011 CSE impeded the parents' opportunity to participate in the development of the June 2011 IEP; (2) whether the CSE had sufficient evaluative information in order to develop the student's IEP; (3) whether the IHO erred in determining that the district failed to offer the student a FAPE based on evidence regarding the assigned public school site.

## V. Applicable Standards

Two purposes of the IDEA (20 U.S.C. §§ 1400-1482) are (1) to ensure that students with disabilities have available to them a FAPE that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living; and (2) to ensure that the rights of students with disabilities and parents of such students are protected (20 U.S.C. § 1400[d][1][A]-[B]; see generally Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239 [2009]; Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 [1982]).

A FAPE is offered to a student when (a) the board of education complies with the procedural requirements set forth in the IDEA, and (b) the IEP developed by its CSE through the IDEA's procedures is reasonably calculated to enable the student to receive educational benefits (Rowley, 458 U.S. at 206-07; R.E. v. New York City Dep't of Educ., 694 F.3d 167, 189-90 [2d Cir. 2012]; M.H. v. New York City Dep't of Educ., 685 F.3d 217, 245 [2d Cir. 2012]; Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 [2d Cir. 2005]). "'[A]dequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP'" (Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 129 [2d Cir. 1998], quoting Rowley, 458 U.S. at 206; see T.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 253 [2d Cir. 2009]). While the Second Circuit has emphasized that school districts must comply with the checklist of procedures for developing a student's IEP and indicated that "[m]ultiple procedural violations may cumulatively result in the denial of a FAPE even if the violations considered individually do not" (R.E., 694 F.3d at 190-91), the Court has also explained that not all procedural errors render an IEP legally inadequate under the IDEA (M.H., 685 F.3d at 245; A.C. v. Bd. of Educ., 553 F.3d 165, 172 [2d Cir. 2009]; Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 381 [2d Cir. 2003]; Perricelli v. Carmel Cent. Sch. Dist., 2007 WL 465211, at *10 [S.D.N.Y. Feb. 9, 2007]). Under the IDEA, if procedural violations are alleged, an administrative officer may find that a student did not receive a FAPE only if the procedural inadequacies (a) impeded the student's right to a FAPE, (b) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE to the student, or (c) caused a deprivation of educational benefits (20 U.S.C. § 1415[f][3][E][ii]; 34 CFR 300.513[a][2]; 8 NYCRR 200.5[j][4][ii]; Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 525-26 [2007]; R.E., 694 F.3d at 190; M.H., 685 F.3d at 245; A.H. v. Dep't of Educ., 394 Fed. App'x 718, 720, 2010 WL 3242234 [2d Cir. Aug. 16, 2010]; E.H. v. Bd. of Educ., 2008 WL 3930028, at *7 [N.D.N.Y. Aug. 21, 2008], aff'd, 361 Fed. App'x 156, 2009 WL 3326627 [2d Cir. Oct. 16, 2009]; Matrejek v. Brewster Cent. Sch. Dist., 471 F. Supp. 2d 415, 419 [S.D.N.Y. 2007], aff'd, 293 Fed. App'x 20, 2008 WL 3852180 [2d Cir. Aug. 19, 2008]).

The IDEA directs that, in general, an IHO's decision must be made on substantive grounds based on a determination of whether the student received a FAPE (20 U.S.C. § 1415[f][3][E][i]). A school district offers a FAPE "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction" (Rowley, 458 U.S. at 203). However, the "IDEA does not itself articulate any specific level of educational benefits that must be provided through an IEP" (Walczak, 142 F.3d at 130; see Rowley, 458 U.S. at 189). The statute ensures an "appropriate" education, "not one that provides everything that might be thought desirable by loving parents" (Walczak, 142 F.3d at 132, quoting Tucker v. Bay Shore Union Free Sch. Dist., 873 F.2d 563, 567 [2d Cir. 1989] [citations omitted]; see Grim, 346 F.3d at 379). Additionally, school districts are not required to "maximize" the potential of students with disabilities (Rowley, 458 U.S. at 189, 199; Grim, 346 F.3d at 379; Walczak, 142 F.3d at 132). Nonetheless, a school district must provide "an IEP that is 'likely to produce progress, not regression,' and . . . affords the student with an opportunity greater than mere 'trivial advancement'" (Cerra, 427 F.3d at 195, quoting Walczak, 142 F.3d at 130 [citations omitted]; see T.P., 554 F.3d at 254; P. v. Newington Bd. of Educ., 546 F.3d 111, 118-19 [2d Cir. 2008]; Perricelli, 2007 WL 465211, at *15). The IEP must be "reasonably calculated to provide some 'meaningful' benefit" (Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114, 1120 [2d Cir. 1997]; see Rowley, 458 U.S. at 192). The student's recommended program must also be provided in the least restrictive environment (LRE) (20 U.S.C. § 1412[a][5][A]; 34 CFR 300.114[a][2][i], 300.116[a][2]; 8 NYCRR 200.1[cc], 200.6[a][1]; see Newington, 546 F.3d at 114; Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 108 [2d Cir. 2007]; Walczak, 142 F.3d at 132; G.B. v. Tuxedo Union Free Sch. Dist., 751 F. Supp. 2d 552, 573-80 [S.D.N.Y. 2010], aff'd, 486 Fed. App'x 954, 2012 WL 4946429 [2d Cir. Oct. 18, 2012]; E.G. v. City Sch. Dist. of New Rochelle, 606 F. Supp. 2d 384, 388 [S.D.N.Y. 2009]; Patskin v. Bd. of Educ., 583 F. Supp. 2d 422, 428 [W.D.N.Y. 2008]).

An appropriate educational program begins with an IEP that includes a statement of the student's present levels of academic achievement and functional performance (see 34 CFR 300.320[a][1]; 8 NYCRR 200.4[d][2][i]; Tarlowe v. New York City Bd. of Educ., 2008 WL 2736027, at *6 [S.D.N.Y. July 3, 2008] [noting that a CSE must consider, among other things, the "results of the initial evaluation or most recent evaluation" of the student, as well as the "'academic, developmental, and functional needs'" of the student]), establishes annual goals designed to meet the student's needs resulting from the student's disability and enable him or her to make progress in the general education curriculum (see 34 CFR 300.320[a][2][i], [2][i][A]; 8 NYCRR 200.4[d][2][iii]), and provides for the use of appropriate special education services (see 34 CFR 300.320[a][4]; 8 NYCRR 200.4[d][2][v]).

A board of education may be required to reimburse parents for their expenditures for private educational services obtained for a student by his or her parents, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parents were appropriate, and equitable considerations support the parents' claim (Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 [1993]; Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 369-70 [1985]; R.E., 694 F.3d at 184-85; T.P., 554 F.3d at 252). In Burlington, the Court found that Congress intended retroactive reimbursement to parents by school officials as an available remedy in a proper case under the IDEA (471 U.S. at 370-71; see Gagliardo, 489 F.3d at 111; Cerra, 427 F.3d at 192). "Reimbursement merely requires [a district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance" had it

5

offered the student a FAPE (Burlington, 471 U.S. at 370-71; see 20 U.S.C. § 1412[a][10][C][ii]; 34 CFR 300.148).

The burden of proof is on the school district during an impartial hearing, except that a parent seeking tuition reimbursement for a unilateral placement has the burden of proof regarding the appropriateness of such placement (Educ. Law § 4404[1][c]; see R.E., 694 F.3d at 184-85; M.P.G. v. New York City Dep't of Educ., 2010 WL 3398256, at *7 [S.D.N.Y. Aug. 27, 2010]).

## VI. Discussion

### A. CSE Process

#### 1. Parental Participation

Although the IHO failed to specifically address the issue of parental participation, it is raised in both the parents' due process complaint notice and petition and, as such, will be discussed herein. The parents allege that the district drafted an IEP prior to the CSE meeting and made "notes" on the draft IEP during the CSE meeting from the input and insight of the student's teachers and parents, but failed to modify the IEP with any of this information, impeding their opportunity to participate in the development of the student's June 2011 IEP.

The IDEA sets forth procedural safeguards that include providing parents an opportunity "to participate in meetings with respect to the identification, evaluation, and educational placement of the child" (20 U.S.C. § 1415[b][1]). Federal and State regulations governing parental participation require that school districts take steps to ensure that parents are present at their child's IEP meetings or are afforded the opportunity to participate (34 CFR 300.322; 8 NYCRR 200.5[d]). In addition, districts are permitted to develop draft IEPs prior to a CSE meeting (Dirocco v. Bd. of Educ., 2013 WL 25959, at *18 [S.D.N.Y. Jan. 2, 2013]). Districts may also "'prepare reports and come with pre[-]formed opinions regarding the best course of action for the [student] as long as they are willing to listen to the parents and parents have the opportunity to make objections and suggestions'" (Dirocco, 2013 WL 25959, at *18).

In the instant case, the district school psychologist, who attended the June 2011 CSE meeting, testified that a draft IEP was prepared prior to the June 2011 CSE meeting using the evaluative information provided by the parents and the student's teachers (see Tr. pp. 128, 134, 168). The district school psychologist further testified that the draft IEP was read verbatim to the parents and to the student's Aaron school teacher during the CSE meeting and there was no disagreement by the parents or the Aaron school teacher to his knowledge (see Tr. pp. 211-12). Additionally, the district school psychologist testified that "very little" changed from the draft IEP, however, certain handwritten notes were made to portions of the draft IEP, such as "needs extra break time," "frequent breaks," "clear expectations," "repetition and rephrasing of directions," and "questions read aloud" (Tr. pp. 208-10; Dist Ex. 8 at pp. 4, 6, 12, 18). The district school psychologist also acknowledged that the handwritten notes were not on the IEP provided to the parents (Tr. p. 209). However, I note that the parents do not dispute the substantive adequacy of the IEP they received. Instead, the parents argue that their participation was impeded because they did not receive the June 2011 IEP with the handwritten notes. First, the district was not obligated to include on the finalized IEP the handwritten notations as these

6

were merely a recordation of the suggestions provided by the parents and the Aaron school teacher. Next, an independent review of the hearing record reveals that the handwritten notes were not substantive or material modifications to the student's needs, but rather explanations of certain of the student's management needs already addressed in the IEP specifying particular strategies to be used for the student (compare Dist. Ex. 8 at pp. 4, 6, 12, 18, with Parent Ex. W at pp. 4, 6, 12, 18). Next, the hearing record reflects meaningful and active parental participation in the development of the student's June 2011 IEP. With respect to the June 2011 CSE meeting, the parents attended the CSE meeting in person and the student's special education teacher from the Aaron school participated via telephone (Parent Ex. W at p. 2). Most notably, during the impartial hearing, when asked by counsel for the district whether the parents had an "opportunity to weigh in on the discussion about what [the student] was like and how he was progressing or not progressing in different areas," the student's father responded "where we felt that we could shed some light on [the student], the person, the student, we did" (Tr. p. 310). Moreover, contemporaneous meeting minutes reveal substantial input by the parent and the student's teacher at the Aaron School (Dist. Ex. 4). Accordingly, the record demonstrates that the parents and the student's special education teacher at the Aaron School had an opportunity to participate in the creation of the student's June 2011 IEP and that the student was not denied a FAPE in that regard.

### 2. Sufficiency of Evaluative Information

The parents also argue on appeal that the June 2011 CSE did not review or discuss the student's most recent evaluation. A review of the hearing record reveals that the CSE had sufficient evaluative information to develop the student's June 2011 IEP.

A district must conduct an evaluation of a student where the educational or related services needs of a student warrant a reevaluation or if the student's parent or teacher requests a reevaluation (34 CFR 300.303[a][2]; 8 NYCRR 200.4[b][4]); however, a district need not conduct a reevaluation more frequently than once per year unless the parent and the district otherwise agree and at least once every three years unless the district and the parent agree in writing that such a reevaluation is unnecessary (8 NYCRR 200.4[b][4]; see 34 CFR 300.303[b][1]-[2]). A CSE may direct that additional evaluations or assessments be conducted in order to appropriately assess the student in all areas related to the suspected disabilities (8 NYCRR 200.4[b][3]). Any evaluation of a student with a disability must use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the student, including information provided by the parent, that may assist in determining, among other things the content of the student's IEP (20 U.S.C. § 1414[b][2][A]; 34 CFR 300.304[b][1][ii]; see Letter to Clarke, 48 IDELR 77 [OSEP 2007]). In particular, a district must rely on technically sound instruments that may assess the relative contribution of cognitive and behavioral factors, in addition to physical or developmental factors (20 U.S.C. § 1414[b][2][C]; 34 CFR 300.304[b][3]; 8 NYCRR 200.4[b][6][x]). A district must ensure that a student is appropriately assessed in all areas related to the suspected disability, including, where appropriate, social and emotional status (20 U.S.C. § 1414[b][3][B]; 34 CFR 300.304[c][4]; 8 NYCRR 200.4[b][6][vii]). An evaluation of a student must be sufficiently comprehensive to identify all of the student's special education and related services needs, whether or not commonly linked to the disability category in which the student has been classified (34 CFR 300.304[c][6]; 8 NYCRR 200.4[b][6][ix]).

In the instant case, a review of the hearing record indicates that the June 2011 CSE had before it a sufficient amount of current evaluative information regarding the student's functional, developmental, and academic needs in order to develop the June 2011 IEP. The record reveals that in developing the IEP, the CSE relied on a December 2010 Classroom Observation report conducted by the district social worker who participated in the June 2011 CSE meeting (district social worker), a February 2011 progress report from the Aaron School, an October 2010 Aaron School speech-language report, and an October 2010 Aaron School OT report (Tr. p. 136; Dist. Exs. 2; 5; 6; 12). Cumulatively these documents contained information regarding the student's deficits in the areas of sensory regulation, fine motor skills, self-regulation, executive functioning, and social/emotional flexibility which are reflected in the June 2011 IEP (Dist. Exs. 2; 5; 6; 12). In addition, although the student's father testified that a private psychoeducational evaluation was conducted within the last two to three years of the June 2011 CSE meeting (Tr. pp. 288-89), despite the lack of evidence of a psychoeducational evaluation report in the hearing record, the June 2011 CSE had sufficient evaluative information from which to determine the student's present levels of performance, create measurable annual goals to assess the student's progress, and recommend a program that sufficiently met the student's described needs and was reasonably calculated to help him make appropriate educational gains. In particular, I note that a district required may rely on information obtained from the student's private school personnel, including sufficiently comprehensive progress reports, in formulating the IEP (see D.B. v. New York City Dep't of Educ., 966 F. Supp. 2d 315, 329-31 [S.D.N.Y. 2013]; G.W. v. Rye City Sch. Dist., 2013 WL 1286154 at *23 [S.D.N.Y. March 29, 2013]; S.F. v. New York City Dep't of Educ., 2011 WL 5419847, at *10 [S.D.N.Y. Nov. 9, 2011]). Furthermore, while the failure to consider the results of the student's most recent psychoeducational evaluation would constitute a procedural violation (34 CFR 300.324[a][1][iii]; 8 NYCRR 200.4[d][2]), even assuming such a violation the parents assert no resultant deficiency in the June 2011 IEP such that the procedural violation rose to the level of a denial of a FAPE (20 U.S.C. § 1415[f][3][E][ii]; 34 CFR 300.513[a][2]; 8 NYCRR 200.5[j][4][ii]).

### B. Assigned Public School Site

On appeal, the district argues that the IHO erred in finding that it failed to offer the student a FAPE based on testimony from the assigned school public teacher during the impartial hearing. The district further argues that the parents' contentions regarding the assigned public school site are speculative because the student never attended the school.

With respect to the parents' claims relating to the assigned public school site, similar to the reasons set forth in other decisions issued by the Office of State Review (e.g., Application of the Dep't of Educ., Appeal No. 14-025; Application of the Dep't of Educ., Appeal No. 12-090; Application of a Student with a Disability, Appeal No. 13-237), the parents' assertions are without merit. More specifically, the parents' claims regarding the assigned public school site turn on how the June 2011 IEP would or would not have been implemented and, as it is undisputed that the student did not attend the assigned public school, the parents cannot prevail on such speculative claims (R.E., 694 F.3d at 186-88; see F.L. v. New York City Dep't of Educ., 553 Fed. App'x 2, 9 [2d Cir. 2014] [citing R.E. and explaining that "[s]peculation that [a] school district will not adequately adhere to [an] IEP is not an appropriate basis for unilateral placement" and that the "appropriate forum for such a claim is 'a later proceeding' to show that the child was denied a [FAPE] 'because necessary services included in the IEP were not provided in practice"]; K.L. v. New York City Dep't of Educ., 530 Fed. App'x 81, 87 [2d Cir. 2013]; P.K.

8

v. New York City Dep't of Educ., 526 Fed. App'x 135, 141 [2d Cir. 2013]; see also C.F. v. New York City Dep't of Educ., 746 F.3d 68, 79 [2d Cir. Mar. 4, 2014]; C.L.K. v. Arlington Sch. Dist., 2013 WL 6818376, at *13 [S.D.N.Y. Dec. 23, 2013]; R.C. v. Byram Hills Sch. Dist., 906 F. Supp. 2d 256, 273 [S.D.N.Y. 2012]). I find that the IHO erroneously relied upon evidence of the assigned public school site based on retrospective testimony given by a teacher from the assigned public school in order to determine whether the district offered the student a FAPE. As reliance on this testimony is impermissibly retrospective in view of the Second Circuit's adoption of the prospective IEP analysis principle in R.E., the IHO's finding on this matter must be reversed.

## VII. Conclusion

In summary, having determined the IHO erred in concluding that the district failed to offer the student a FAPE by erroneously relying on retrospective testimony, the necessary inquiry is at an end and there is no need to reach the issues of whether the student's unilateral placement at the Aaron School was an appropriate placement or whether equitable considerations supported the parent's requested relief (see Burlington, 471 U.S. at 370; M.C. v. Voluntown Bd. of Educ., 226 F.3d 60, 66 [2d Cir. 2000]).

I have considered the remaining contentions and find it is unnecessary to address them in light of my determinations herein.

**THE APPEAL IS SUSTAINED.**

**THE CROSS-APPEAL IS DISMISSED.**

**IT IS ORDERED** that the IHO's decision dated January 30, 2013 is modified, by reversing those portions which found that the district denied the student a FAPE for the 2011-12 school year and directed the district to pay for the costs of the student's tuition at the Aaron School.

Dated:   Albany, New York
         October 29, 2014

JUSTYN P. BATES
STATE REVIEW OFFICER

9