UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
Z.A. and R.A., individually and on behalf of D.A.,   :

                                Plaintiffs,     :

                                           15 CV 1539 (KPF)

            -against-                 :

                                         ECF Case

                                         :

THE NEW YORK CITY DEPARTMENT OF
EDUCATION,                                 :
                          Defendant.
---------------------------------------------------------------- X

# MEMORANDUM OF LAW IN SUPPORT OF
# MOTION FOR SUMMARY JUDGMENT

LAUREN A. BAUM
KIRA I. EPSTEIN
Law Offices of Lauren A. Baum, P.C.
61 Broadway, Suite 1060
New York, New York 10006
(212) 644-4414
lbaum@nyspecialedlaw.com
kepstein@nyspecialedlaw.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATUTORY FRAMEWORK AND BURDEN OF PROOF . . . . . . . . . . . . . . . . . . . . . . . . . .1

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    1.    The April 19, 2010 CSE Meeting and IEP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    2.    The DOE's Recommended Public School Placement for the 2010-11 SY . . . . . . 6

    3.    D.A.'s Unilateral Placement at Aaron for the 2010-11 SY . . . . . . . . . . . . . . . . . 7

    4.    The June 1, 2011 CSE Meeting and IEP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    5.    The DOE's Recommended Public School Placement for the 2011-12 SY . . . . . . 8

    6.    D.A.'s Unilateral Placement at Aaron for the 2011-12 SY . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.    THE SRO APPLIED AN INAPPROPRIATE STANDARD OF REVIEW IN
           REVIEWING THE 2010-11 AND 2011-12 SY IHO DECISIONS. . . . . . . . . . . 10

    II.    THE SRO ERRED REVERSING THE IHOS' DECISIONS AND IN
          FINDING THAT THE DOE OFFERED D.A. A FAPE  FOR THE
          2010-11 AND 2011-12 SYs.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.    The SRO Erred Reversing the IHO's Decision and in Finding that
            Defendant Offered D.A. a FAPE for the 2010-11 SY. . . . . . . . . . . . . . . . . . . 11

            1.    A Preponderance of the Evidence Fails to Support the SRO's
                 Finding that the 2010-11 SY IEP Was Procedurally Adequate. . . . . . . .11

                a.    The April 2010 CSE Failed to Consider Sufficient
                    Evaluative Material. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

                b.    The CSE Failed to Adequately Consult the Parents or the
                    Participants from Aaron Regarding its Recommendations
                    for the 2010-2011 SY.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

i

2.     <u>A Preponderance of the Evidence Fails to Support the SRO's Finding that the 2010-2011 IEP was Substantively Adequate</u> . . . . . . . . . . . . . . . 16

3.     <u>The Court Should Defer to the IHOs Reasoned Conclusion That Defendant Failed to Sustain its Burden to Show that P.S. 6 Was Appropriate for D.A. and Capable of Implementing His IEP for the 2010-11 SY</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      a.     <u>The IHO Correctly Construed the Scope of Defendant's Burden of Proof with Respect to P.S. 6, and the SRO Erroneously Reversed</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      b.     <u>The IHO Correctly Found that Defendant Failed to Sustain its Burden of Proof with Respect to P.S. 6, and the SRO Erroneously Reversed</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

B.     <u>The SRO Erred Reversing the IHO's Decision and in Finding that Defendant Offered D.A. a FAPE for the 2011-2012 SY</u> . . . . . . . . . . . . . . . . . . 25

      1.     <u>A Preponderance of the Evidence Fails to Support the SRO's Finding that the 2011-12 IEP Was Procedurally Adequate</u> . . . . . . . . . . 25

           a.     <u>The CSE Failed to Consider Sufficient Evaluative Material in Developing D.A.'s 2011-12 SY IEP</u> . . . . . . . . . . . . . . . . . . . . . . 25

           b.     <u>The CSE Failed to Adequately Consult the Parent or the Participants from Aaron Regarding its Recommendations for the 2011-2012 SY</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

      2.     <u>A Preponderance of the Evidence Fails to Support the SRO's Finding that the 2011-12 IEP was Substantively Adequate</u> . . . . . . . . . . 27

      3.     <u>The Court Should Defer to the IHO's Reasoned Conclusion That Defendant Failed to Sustain Its Burden of Proof Because It Failed to Show That JHS 104 Was Capable of Appropriately Implementing D.A.'s 2011-12 SY IEP</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

           a.     <u>The IHO Correctly Construed the Scope of Defendant's Burden of Proof to Include an Obligation to Show its Offered Placement Was Appropriate for D.A. and Capable of Providing D.A. with a Program in Conformity with his IEP, and the SRO Erroneously Reversed</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

  b.   The IHO Correctly Found that Defendant Failed to Sustain its Burden of Proof with Respect to JHS 104, and the SRO Erroneously Reversed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

III.   AARON APPROPRIATELY ADDRESSED D.A.'S NEEDS FOR THE 2010-11 AND 2011-12 SYs.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

IV.   EQUITABLE CONSIDERATIONS SUPPORT PLAINTIFFS' CLAIMS . . . . . . .33

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

# TABLE OF AUTHORITIES

<u>**Cases**</u>

A.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.,
    553 F.3d 165 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Bd. of Educ. v. Rowley,
    458 U.S. 176 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

B.R. v. New York City Dep't of Educ.,
    910 F. Supp. 2d 670 (S.D.N.Y 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13, 21, 26

C.B. v. New York City Dep't of Educ.,
    No. 02 Civ. 4620, 2005 U.S. Dist. LEXIS 15215 (E.D.N.Y. June 10, 2005) . . . . . . . . . . 4

Cerra v. Pawling Cent. Sch. Dist.,
    427 F. 3d. 186 (2d Cir 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

C.F. v. New York City Dep't of Educ.,
    746 F.3d 68 (2d Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 3, 10

C.L. v. Scarsdale Union Free School District,
    744 F.3d 826 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

C.U. v. New York City Dep't of Educ.,
    2014 U.S. Dist. LEXIS 72075 (S.D.N.Y. May 27, 2014). . . . . . . . . . . . . . . . . . . . . . . . 3

D.C. v. New York City Dep't of Educ.,
    950 F. Supp. 2d 494 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . 19, 21, 24, 32

D.D.-S. v. Southold Union Free Sch. Dist.,
    No. 09 Civ. 5026, 2011 U.S. Dist. LEXIS 100809 (E.D.N.Y. Sept. 2, 2011). . . . . . . . . . . 31

E.F. v. New York City Dep't of Educ.,
    No. 12 CV 2217, 2013 U.S. Dist. LEXIS 117143 (E.D.N.Y. Aug. 19, 2013) . . . . . . . . . . 14

E.M. v. New York City Dep't of Educ.,
    758 F.3d 442 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

F.B. v. New York City Dep't of Educ.,
    923 F. Supp. 2d 570 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

F.O. v. New York City Dep't of Educ.,
    976 F. Supp.2d 499 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 11, 12

Forest Grove v. TA,,
    557 U.S. 230 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Frank G. v. Bd. of Educ. of Hyde Park,
    459 F.3d 356 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 33

Gagliardo v. Arlington Cent. Sch. Dist.,
    489 F. 3d 105 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 3, 33

Jennifer D. v. New York City Dep't of Educ.,
    550 F. Supp. 2d 420 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Lillbask v. State of Conn. Dep't of Educ.,
    397 F.3d 77 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 22, 30

M.H. v. New York City Dep't of Educ.,
    712 F. Supp. 2d 125 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . 4, 10, 13, 16, 17

M.H. v. New York City Dep't of Educ.,
    685 F.3d 217 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

M.O. v. New York City Dep't of Educ.,
    No. 14-1473, 2015 U.S. App. LEXIS 12161, 17-18 (2d Cir. July 15, 2015). . . . . . . . .20, 21

N.R. ex rel. T.R.,
    2009 WL 874061 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

P.K. v. Bedford Cent. Sch. Dist.,
    569 F. Supp. 2d 371 (SDNY 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

R.E. v. New York City Dep't of Educ.,
    694 F.3d 167 (2d Cir. 2012),
    cert. denied, 133 S.Ct. 2802 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 11, 16, 19, 20

R.K. v. New York City Dep't of Educ.,
    09 CV 4478, 2011 U.S. Dist. LEXIS 32248 (E.D.N.Y. Jan. 21, 2011). . . . . . . . . . . . . . 14

Sch. Comm. of Burlington v. Dep't of Educ.,
    471 U.S. 359 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

Schreiber v. E. Ramapo Cent. Sch. Dist.,
    700 F. Supp. 2d 529 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

Scott v. New York City Dep't of Educ.,
    No. 12 Civ. 3558, 2014 U.S. Dist. LEXIS 41238 (S.D.N.Y. Mar. 25, 2014) . . . . . . . . . 21

T.G. ex rel. R.P. v. New York City Dep't of Educ.,
    973 F. Supp. 2d 320 (S.D.N.Y. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V.S. v. New York City Dep't of Educ.,
    25 F. Supp. 3d 295 (E.D.N.Y. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Walczak v. Florida Union Free Sch. Dist.,
    142 F.3d 119 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 31

**Statutes**

20 U.S.C. § 1412(a)(10)(C)(iii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

20 U.S.C. § 1415(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

20 U.S.C. § 1415(i)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

20 U.S.C. § 1415(i)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

N.Y. Educ. L. § 4404(1)(c)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

**Regulations**

8 N.Y.C.R.R. § 200.1(ddd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

8 N.Y.C.R.R. §§ 200.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

8 N.Y.C.R.R. § 200.4(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 25

8 N.Y.C.R.R. § 200.4(d)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . 12, 13

8 N.Y.C.R.R. § 200.4(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

8 N.Y.C.R.R. § 200.6(a)(3)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

8 N.Y.C.R.R. § 200.6(a)(3)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

8 N.Y.C.R.R. § 279.12(a) . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

34 C.F.R. § 300.305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . .12, 25

34 C.F.R. §§ 300.322(A) . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13, 26

34 C.F.R. § 300.324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 13, 25, 26

34 C.F.R. § 300.324 (a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

34 C.F.R. § 300.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . .11, 25

CPLR Art. 7803 . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

## PRELIMINARY STATEMENT

Plaintiffs submit this Memorandum in support of their Motion for Summary Judgment. They seek reversal of the decisions of the State Review Officer ("SRO") reversing the thorough and well-reasoned decisions of the Impartial Hearing Officers ("IHOs"), which found that Defendant failed to offer D.A. a free and appropriate public education ("FAPE") for the 2010-11 and 2011-12 school years ("SYs") and granted Plaintiffs' claims for funding for the cost of D.A.'s attendance at the Aaron School ("Aaron") during both SYs. Since the SRO issued erroneous decisions that failed to carefully weigh the evidence in the record, misconstrued and misapplied relevant law, disregarded IHO credibility findings, and failed to provide adequately supported conclusions, the SRO's decisions do not warrant deference by this Court. Accordingly, the Court should instead defer to the more well-reasoned decisions of the IHOs and find that Defendant failed to sustain its burden of showing that it prepared procedurally and substantively valid Individualized Education Programs ("IEPs") for D.A. and of demonstrating that it offered public school placements capable of appropriately implementing D.A.'s IEPs and addressing D.A.'s needs for the 2010-11 and 2011-12 SYs; that Aaron appropriately addressed D.A.'s needs during those SYs; and that a weighing of equities supports Plaintiffs' claims for tuition funding. The record shows that Plaintiffs are entitled to judgment as a matter of law and their Motion should be granted.

## STATUTORY FRAMEWORK AND BURDEN OF PROOF

If a school district fails to provide a FAPE to a student with a disability, parents may enroll their child in a private school and seek direct tuition funding or reimbursement for the cost of the program. Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 363 (2d Cir. 2006) (citation omitted); E.M. v. New York City Dep't of Educ., 758 F.3d 442, 453 (2d Cir. 2014). This remedy is available

1

regardless of whether the parent of the student in question has actually availed him or herself of the services offered to the student for the school year in question. See Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 372 (1985); Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 247 (2009); Frank G., 459 F.3d at 372 (explaining that such a position would "place the parents of children with disabilities in the untenable position of acquiescing to an inappropriate placement in order to preserve their right to seek reimbursement from the public agency").

A two prong test applies to determine whether parents are entitled to funding/reimbursement: (1) was the IEP proposed by the school district for the student appropriate; and (2) was the private placement appropriate to meet the student's needs. Burlington, 471 U.S. at 370.  In New York, Defendant has the burden of proof on the first prong, whereas Plaintiff has the burden of proof on the second prong. C.F. v. New York City Dep't of Educ., 746 F.3d 68, 76 (2d Cir. 2014). "[E]quitable considerations [relating to the reasonableness of the action taken by the parents] are [also] relevant to fashioning relief." Frank G., 459 F. 3d at 363-64 (citation omitted); see also C.F., 746 F.3d at 76; 20 U.S.C. § 1412(a)(10)(C)(iii).

Parents who challenge the educational program developed for their child and wish to exercise their right to place their child in a private school and seek reimbursement may request a due process hearing before an IHO. Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 108 (2d Cir. 2007) (citing 20 U.S.C. § 1415(f); N.Y. Educ. Law § 4404(1)).  In New York, any party aggrieved by an IHO's decision may appeal it to the SRO, see id. at 108, and the SRO's decision may be appealed to state or federal court. See id. (citing 20 U.S.C. § 1415(i)(2)(A)).

## STANDARD OF REVIEW

In evaluating an IDEA case on appeal, the district court must independently review the

administrative record *de novo* and "determine by a preponderance of the evidence whether the IDEA's provisions have been met." <u>Jennifer D. v. New York City Dep't of Educ.</u>, 550 F. Supp. 2d 420, 429 (S.D.N.Y. 2008) (citation omitted); <u>see also</u> 20 U.S.C. § 1415(i)(2)(C); <u>Gagliardo</u>, 489 F.3d at 112; <u>C.F.</u>, 746 F.3d at 77.  The court must give "'due weight' to [the administrative] proceedings" in its review since the "judiciary generally 'lacks the "specialized knowledge and experience necessary to resolve . . . questions of educational policy.'"<u>A.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.</u>, 553 F.3d 165, 171 (2d Cir. 2009) (quoting <u>Gagliardo</u>, 489 F.3d at 113 (citation omitted)).

The degree of deference owed to the agency determinations below depends upon both the particular issue decided and "the quality of [the] opinion." <u>F.O. v. New York City Dep't of Educ.</u>, 976 F. Supp. 2d 499, 511 (S.D.N.Y. 2013) (quoting <u>R.E. v. New York City Dep't of Educ.</u>, 694 F.3d 167, 189 (2d Cir. 2012), <u>cert. denied</u>, 133 S.Ct. 2802 (2013)).  The deference due generally "hinge[s] on the kinds of considerations that normally determine whether any particular judgment is persuasive, for example whether the decision being reviewed is well-reasoned, and whether it was based upon substantially greater familiarity with the evidence and the witnesses than the reviewing court." <u>C.U. v. New York City Dep't of Educ.</u>, 23 F.3d 210, 223 (S.D.N.Y. May 27, 2014) (citing <u>C.L. v. Scarsdale Union Free Sch. Dist.</u>, 744 F.3d 826, 838 (2d Cir. 2014) (citation omitted)).  More deference is due to administrative findings on issues involving educational judgment, such as "determinations regarding the substantive adequacy of an IEP," however, than to findings on issues involving more objective assessments, such as "whether the IEP was developed according to the proper procedures." <u>M.H. v. New York City Dep't of Educ.</u>, 685 F.3d 217, 244 (2d Cir. 2012).  No deference is due to administrative interpretations of law, <u>see Lillbask v. State of Conn. Dep't of</u>

3

Educ., 397 F.3d 77, 83 (2d Cir. 2005), and the "'[c]ourt may reject factual findings that are unsupported . . . or are controverted by the record.'" Schreiber v. E. Ramapo Cent. Sch. Dist., 700 F. Supp. 2d 529, 547 (S.D.N.Y. 2010) (quoting C.B. v. New York City Dep't of Educ., No. 02 Civ. 4620, 2005 U.S. Dist. LEXIS 15215, at *13 (E.D.N.Y. June 10, 2005)).  Furthermore, the Second Circuit has been clear that a court should reject agency findings that are not "grounded in 'thorough and careful' analysis" and "supported by a preponderance of the objective evidence." M.H., 685 F.3d at 246; see also R.E., 694 F.3d at 189.

Although a reviewing court typically should defer to the SRO in cases where the decisions of the SRO and IHO conflict, the Second Circuit has held that it is "entirely appropriate for the court . . . to consider the IHO's analysis" when it finds that the SRO's decision is "'insufficiently reasoned to merit deference." See R.E., 694 F.3d at 189 (quoting M.H., 685 F.3d at 246); C.L. v. New York City Dep't of Educ., No. 12 Civ. 1676, 2013 U.S. Dist. LEXIS 3474, at *20-21 (S.D.N.Y. Jan. 2, 2013), aff'd 552 Fed. Appx. 81 (2d Cir. 2014) (deferring to the IHO's more reasoned analysis where the SRO failed to grapple with contradictory evidence or to set forth the basis for his conclusions); see also M.H. v. New York City Dep't of Educ., 712 F. Supp. 2d 125, 154-55 (S.D.N.Y. 2010), aff'd 685 F.3d 217 (2d Cir. 2012) (reversing the SRO where he ignored evidence that was considered by the IHO); F.O., 976 F. Supp. 2d at 513-18 (reversing the SRO for "fail[ing] to consider thoroughly or carefully contrary testimony" and for failing to set for the basis for rejecting IHO credibility findings); B.R. v. New York City Dep't of Educ., 910 F. Supp. 2d 670, 677-78 (S.D.N.Y 2012) (reversing "conclusory assertions" of the SRO lacking supporting analysis and deferring to the IHO's more reasoned analysis).  Similarly, if the reviewing court finds the decisions of both the SRO and IHO to be inadequately reasoned on particular issues, then it should defer to neither decision. See,

4

e.g., V.S. v. New York City Dep't of Educ., 25 F. Supp. 3d 295, 299-301 (E.D.N.Y. 2014).

## STATEMENT OF FACTS

D.A. has a history of academic and social deficits; pragmatic, expressive, and receptive language difficulties; delayed motor skills; anxiety, cognitive rigidity, and inflexibility; auditory processing issues; sensory integration and regulation difficulties; and problems with executive functioning, sustained attention, and impulsivity.  T. 319, 387-88, 308-09, 425-26; Ex. I, 3.[1]

In November and December 2008 and February 2009, D.A. was evaluated by Dr. David Salsberg.  T. 329; Ex. I.  Among other things, due to D.A.'s issues, Dr. Salsberg recommended placement for D.A. in a small, special education program "in a structured, therapeutic, and language-based setting . . . [that] specifically include[s] individualized focus on children with attentional, pragmatic language, and emotional needs." Ex. I.10.  D.A.'s parents provided Dr. Salsberg's evaluation report to the CSE for consideration in developing educational recommendations for D.A. T. 329.  Consistent with Dr. Salsberg's recommendations and the input of the individuals involved in D.A.'s education during the relevant IEP meetings for each year, during the 2010-11 and 2011-12 SYs, D.A. required placement in a small, structured, supportive special education class in a small, structured educational environment, with the presence of two teachers in the classroom to provide him with appropriate levels of individual instructional support and supervision, with appropriate related services, and with appropriate and similarly-functioning peers and peer models.  Ex. I.

--------

[1]Citations to "T." refer to pages of the impartial hearing transcript relating to the 2010-11 SY, whereas citations to "Tr." refer to pages of the hearing transcript relating to the 2011-12 SY. Citations to "Ex. [Letter]" or "Ex. [Number]" refer to parent and DOE exhibits from the impartial hearing regarding the 2010-11 SY, whereas citations to exhibits from the 2011-12 SY impartial hearing are designated by reference to "Par. Ex. [Letter]" or "DOE Ex. [Number]".

1.    The April 19, 2010 CSE Meeting and IEP

The CSE met on April 19, 2010 to develop an IEP for D.A. for the 2010-11 SY. Ex. C.
Plaintiffs Z.A. and R.A. attended this meeting and D.A.'s then-current teacher at Aaron participated
by telephone.  Ex. C-2.  Feng Ye participated as special education teacher and district representative
for the CSE, Rose Fochetta participated as school psychologist, and a general education teacher
participated as well. Ex. C-2.

Prior to the meeting, Ms. Ye and Ms. Fochetta allegedly prepared draft pages of D.A.'s new
IEP, but did not provide copies of these draft pages to the parents or other meeting participants. Tr.
232-33.  Moreover, the CSE failed to have, discuss, or review the February 2009 psychoeducational
evaluation, D.A.'s most recent teacher reports, his 2009-10 SY IEP, or a social history, medical
report, speech/language therapy ("SL") evaluation, or occupational therapy ("OT") evaluation. See
34 C.F.R. § 300.324; 8 N.Y.C.R.R. §§ 200.4(d)(2), (f)(1); T. 219- 21, 233-37, 285, 330-34; Ex. F,
G, H, K, L.  Ms. Ye admitted during the impartial hearing that the CSE only considered and
discussed a classroom observation and Aaron school progress reports in developing D.A.'s IEP, and
her testimony failed to show that the CSE considered D.A.'s most-recent Aaron progress report from
February 2010 in developing the IEP, even though the parents had provided the CSE with copies of
this report three times prior to the IEP meeting and even though this report would have provided the
team with more current information about D.A.'s functioning.  T. 194, 204, 213-16, 235-37; Ex. 11,
F, K, L.

The CSE recommended placement for D.A. in a full-time 12:1:1 special class in a community
school, along with related services of SL, OT, and counseling for the 2010-11 SY, Ex. C-19, without
fully or meaningfully consulting the parents or the individuals involved in D.A.'s education

6

regarding its recommendations.

2.    The DOE's Recommended Public School Placement for the 2010-11 SY

Nearly four months after the meeting, D.A.'s parents received a Final Notice of Recommendation ("FNR") offering D.A. placement in a 12:1:1 class at P.S. 6. Ex. D, 18. The FNR did not specify which class the CSE was recommending for D.A. Ex. 18. Because they received the FNR over the summer and were thus unable to visit the school at that time, the parents sent a letter to the CSE requesting additional information about the proposed class, but they did not receive a response to their inquiries. T. 344-45; Ex. D.

When P.S. 6 reopened in the fall, Plaintiffs arranged to visit to consider its appropriateness for D.A. for the SY. They met with Dr. Muldowney and observed the 5th grade 12:1:1 class offered to D.A. Ex. E. Among other issues, the parents found that the classroom and school environments were inappropriate for D.A., that he would not receive the level of individual attention and support he needed in the offered class, and that the school lacked a sensory gym. Ex. E.

Based upon their visit, Plaintiffs determined that the placement offered at P.S. 6 would not be appropriate for D.A. and wrote to the CSE detailing the reasons for their decision. Ex. E. In their letter, Plaintiffs reiterated the concerns they had expressed at the April 2010 CSE meeting regarding the inappropriateness of an 12:1:1 class for D.A. Ex. E. However, they also indicated their continued willingness to reconsider the offered placement if the CSE provided them with additional information, as well as their willingness to consider any alternative placement recommended for the 2010-11 SY. Ex. E. Defendant again failed to respond. T. 345, 349; Ex. E.

3.    D.A.'s Unilateral Placement at Aaron for the 2010-11 SY

Due to the DOE's failure to offer D.A. an appropriate program, Plaintiffs chose to unilaterally

place D.A. at Aaron for the 2010-11 SY.  Plaintiffs incurred a financial obligation of $45,675 for

D.A.'s enrollment at Aaron for the 2010-11 SY, which they have paid in full. Ex. V.

>    4.    <u>The June 1, 2011 CSE Meeting and IEP</u>

The CSE convened on June 1, 2011 and developed an IEP for D.A. for the 2011-12 school

year.  DOE Ex. 8.  R.A. and Z.A. attended this meeting, and D.A.'s then-current special education

teacher participated by telephone from Aaron. Par. Ex. C-2.

The CSE drafted an IEP for D.A. prior to the meeting, and then took notes on that draft

during the meeting based upon the input of D.A.'s teacher and parents, but then failed to actually

modify the IEP to incorporate this information, thereby precluding the parents and D.A.'s school

from full participation in D.A.'s IEP development. Tr. 128; 134-35, 140-41, 167-68, 203-04, 208-09,

210, 221; DOE Ex. 8; Par. Ex. W.  Furthermore, the CSE did not have, review or discuss D.A.'s

most recent psychoeducational evaluation, nor is there evidence that the CSE discussed or utilized

any such evaluation in the development of D.A.'s IEP.  Tr. 171-73, 287-89.

The CSE recommended a 12:1:1 special class in a community school and related services of

SL and OT for D.A. for the 2011-12 SY. DOE Ex. 8.  The parents advised the CSE that they did not

believe the recommended program would provide sufficient support for D.A. since it would not

provide him with the two classroom teachers that he required, but they indicated that they were

willing to visit and consider whatever placement was recommended for D.A. Tr. 291-92, 313.

>    5.    <u>The DOE's Recommended Public School Placement for the 2011-12 SY</u>

In July 2011, D.A.'s parents received a FNR offering him placement in a special class,

service category E 31, at JHS 104, along with related services. Tr. 295; DOE Ex. 7.  The FNR did

not specify which class the CSE was recommending for D.A. or the staffing ratio. DOE Ex. 7; Par.

Ex. H.  In August 2011, the parents advised the CSE that they would be unable to visit the program to consider its appropriateness until the school reopened in the fall. Tr. 296; Par. Ex. H.  In their letter, they requested information about the recommended class and program that would assist them in assessing its appropriateness, but they did not receive a response. Tr. 298-99; Par. Ex. H.

In the Fall of 2011, D.A.'s parents called JHS 104 several times and left messages asking for an appointment to visit, but did not receive any return call. Par. Ex. E.  Eventually, R.A. went to the school in person and was able to arrange a visit for December 23, 2011, which was the first date offered to her by school personnel as a date on which she could visit. Par. Ex. E.

During her visit, the parent was permitted to observe the offered 6th grade 12:1:1 class, but saw that there were more than the 12 students slated in the classroom, raising concerns that the placement was unable to provide D.A. with a program in conformity with his full-time 12:1:1 IEP recommendation. Par. Ex. E.  Moreover, based on her visit and additional information she obtained about the school on the DOE's website, the parent became concerned that the classroom and school environments would not be appropriate for D.A., and that he would not receive the level of individual attention and support from a teacher that he required in the program and offered class. Par. Ex. E.  Plaintiffs determined that JHS 104 would not be appropriate for D.A. and wrote to the CSE to explain the reasons for their decision. Tr. 297-301; Par. Ex. E.  In their letter, the parents indicated their continued willingness to consider any appropriate program or placement the DOE offered to D.A. for the 2011-12 SY, but the DOE failed to respond to their letter. Tr. 299; Par. Ex. E.

6.    D.A.'s Unilateral Placement at Aaron for the 2011-12 SY

Due to the DOE's failure to offer D.A. an appropriate program, Plaintiffs chose to unilaterally place D.A. at Aaron for the 2011-12 SY.  Plaintiffs incurred a financial obligation of $47,950 for

9

D.A.'s enrollment at Aaron for the SY, which they have paid in full.  Par. Ex. Q.

**ARGUMENT**

## I.     THE SRO APPLIED AN INAPPROPRIATE STANDARD OF REVIEW IN REVIEWING THE 2010-11 AND 2011-12 SY IHO DECISIONS.

The standard of review applied by the SRO in reviewing the IHO decisions in these cases, as in all such cases, see 8 N.Y.C.R.R. § 279.12(a), improperly afforded the IHOs no measure of deference, despite the fact that the IHOs were in a better position to evaluate the records in these cases since the IHOs witnessed the presentation of witnesses and evidence.  Instead of affording any deference to the IHOs, the SRO completely substituted its own judgment for that of the IHOs.  This *de novo* standard of review flies in the face of New York's statutory standard for judicial review of administrative decisions set forth in Article 7803 of the Civil Practice Law and Rules, under which an administrative decision is properly overturned only if it is arbitrary, capricious, or an abuse of discretion, or unsupported by substantial evidence in the record. See CPLR Art. 7803.

## II.    THE SRO ERRED IN REVERSING THE IHOS' DECISIONS AND IN FINDING THAT THE DOE OFFERED D.A. A FAPE FOR THE 2010-11 AND 2011-12 SYs.

In determining whether an IEP developed for a child was appropriate, the Court must consider "(1) whether the [school board] complied with the procedural requirements of the IDEA, and (2) whether the IEP was 'reasonably calculated to enable the child to receive educational benefits.'" M.H., 712 F. Supp. 2d at 129-30 (citations omitted).  The DOE has the burden of proof on both issues, see C.F., 746 F.3d at 76, and a preponderance of the evidence fails to the SRO's findings that the DOE met its burden of proof with respect to the 2010-11 and 2011-12 SYs.  Since neither SRO decision was adequately reasoned to merit deference, the Court should instead defer to

the reasoned analysis of the IHOs and their findings that Defendant failed to show that it offered

D.A. a FAPE for either SY. See R.E., 694 F.3d at 189; F.O., 976 F. Supp. 2d at 513-18.

**A.**     **The SRO Erred in Reversing the IHO's Decision and in Finding that Defendant Offered D.A. a FAPE for the 2010-11 SY.**

      1.     A Preponderance of the Evidence Fails to Support the SRO's Finding that the 2010-11 SY IEP Was Procedurally Adequate.

Procedural violations support claims for tuition funding if they impede a student's right to

a FAPE, significantly impede the parent's opportunity to participate in the decision making

process, or cause a deprivation of educational benefits. See R.E., 694 F.3d at 190-91.  "Multiple

procedural violations may cumulatively result in the denial of FAPE even if the violations

considered individually do not," and even if those procedural violations are minor. Id.  The

SRO's findings rejecting Plaintiffs' procedural challenges to D.A.'s IEP were neither well-

reasoned, nor careful and do not warrant deference by the Court. See R.E., 694 F.3d at 189; F.O.,

976 F. Supp. 2d at 513-18.  As an initial matter, the SRO failed to discuss and provided no

reasoning for ignoring the IHO's significant finding that the testimony of D.A.'s father, Z.A., was

more credible than that of the DOE's IEP witness, Feng Ye, with respect to the April 2010 IEP

meeting. See Compl. Ex. A at 6; Compl. Ex. B at 9-12.  The IHO was in a better position to

evaluate the credibility of the witnesses since she personally witnessed the testimony, and she

properly concluded that Z.A. had a better and more independent recollection of the IEP meeting

than Ms. Ye. See Comp. Ex. A at 5-6.  This finding provided a strong foundational underpinning

for her finding that the 2010-11 IEP was procedurally inadequate.  The SRO's failure to lend any

credence to the IHO's well-supported credibility determination or to address the finding in his

11

decision alone justifies affording the SRO's decision diminished weight. See e.g., F.O., 976 F. Supp. 2d at 513-18.

              a.       The April 2010 CSE Failed to Consider Sufficient Evaluative Material.

An IEP must be based upon a complete assessment of a student's abilities and needs. 34 C.F.R. §§ 300.4, 300.305, 300.324; 8 N.Y.C.R.R. § 200.4(b), (f)(1).  In developing an IEP, a CSE must consider a student's initial or most recent evaluations; current assessments; strengths; and her academic, developmental, and functional needs, in addition to parental concerns. 34 C.F.R. § 300.324; 8 N.Y.C.R.R. § 200.4(f)(1).  While the law may not mandate that the information used to develop a student's IEP come from a particular source, the CSE is required to ensure that it has sufficient evaluative and documentary material to justify its recommendations and goals. See 34 C.F.R. § 300.324(a); 8 N.Y.C.R.R. § 200.4(d)(2).  A review of the record fails to support the SRO's reversal of the IHO's finding that the CSE relied upon inadequate evaluative material in developing D.A.'s 2010-11 SY IEP.

The record belies the SRO's finding that D.A.'s IEP was based upon comprehensive evaluative material. See Compl. Ex. B at 10.  Ms. Ye admitted during the impartial hearing that the CSE only considered a classroom observation and Aaron school progress reports in developing D.A.'s IEP. T. 192, 204, 213; Ex. 11.  Ms. Ye's testimony failed to establish that the CSE considered D.A.'s most-recent Aaron progress report from February 2010 in developing the IEP, even though the parents provided Ms. Ye with copies of this report three times prior to the April 2010 CSE meeting and even though this report would have provided the CSE with more current information regarding D.A.'s functioning in his school environment. See supra Facts Part 1.  The SRO found that information from D.A.'s November 2009 progress report was

incorporated into his IEP, but failed to explain why the CSE reliance on this report, which was drafted ten months prior to the start of the 2010-11 SY, was sufficient to overcome the CSE's failure to consider more recent documentation, particularly since a more recent report of D.A.'s functioning was available to the team at the time. See Compl. Ex. B at 10.

The record also shows that the CSE failed to discuss or review Dr. Salsberg's evaluation report, despite the fact that this evaluation was D.A.'s most current testing available at the time of the meeting. T. 219-23. While Ms. Ye claimed to have reviewed this evaluation prior to the April 2010 meeting, she admitted that this evaluation was not used to develop D.A.'s IEP or considered at the IEP meeting, calling into question the extent to which this evaluation actually informed the IEP. T. 222-23. Though the SRO is correct in observing that "the IDEA 'does not require that the [CSE] review every single item of data available, nor has case law interpreted it to mean such," see Compl. Ex. B at 10; T.G. ex rel. R.P. v. New York City Dep't of Educ., 973 F. Supp. 2d 320, 340 (SDNY 2013) (quoting F.B. v. New York City Dep't of Educ., 923 F. Supp. 2d 570, 581-82 (SDNY 2013)), the CSE is nonetheless required to ensure that it has sufficient evaluative and documentary material to justify its recommendations and goals. See 34 C.F.R. § 300.324(a); 8 N.Y.C.R.R. § 200.4(d)(2). The IHO properly found that it was necessary for the CSE to discuss Dr. Salsberg's evaluation report in developing D.A.'s IEP since it was the most recent testing available and provided critical information regarding the kind of program D.A. required. See Compl. Ex. A at 6-7. The SRO offered no explanation as to why he disregarded the IHO's finding, see Compl. Ex. B at 10, and the Court owes no deference to such unsupported conclusions. See M.H.,712 F. Supp. 2d 125, 154-55; B.R., 910 F. Supp. 2d at 677-78.

13

Given the absence of evidence to show that the CSE conducted or reviewed a social history, medical assessment, or SL or OT evaluations, or reviewed D.A. prior IEP in developing D.A.'s IEP, the IHO properly reasoned that the CSE failed to consider sufficient evaluative material in developing D.A.'s IEP.  See Compl. Ex. A at 6.  Without carefully examining the IHO's findings, the SRO concluded that Plaintiffs' allegations regarding evaluative material were unfounded. See Compl. Ex. B at 9-11. The Court should defer to the IHO's more well-reasoned findings on this issue.

       b.     The CSE Failed to Adequately Consult the Parents or the Participants from Aaron Regarding its Recommendations for the 2010-2011 SY.

A CSE must ensure that IEP meeting participants are afforded an opportunity to contribute meaningfully to the discussion so that a true conference is possible. See 8 N.Y.C.R.R. §§ 200.3, 200.4(d)(2), (f)(1); 34 C.F.R. §§ 300.322(A); 300.324.  A parent receives such an opportunity if he or she is "significantly involved in developing [the student's] special education plans", "actively participate[s] in discussing [the student's] needs", and is "frequently consulted for input about the . . . proposed plan." Cerra v. Pawling Cent. Sch. Dist., 427 F. 3d. 186, 193 (2d Cir. 2005).  While the CSE need not agree with suggestions a parent provides or accede to parental requests, it must listen to parental concerns, see E.F. v. New York City Dep't of Educ., No. 12 CV 2217, 2013 U.S. Dist. LEXIS 117143, at *59-61 (E.D.N.Y. Aug. 19, 2013), and fully discuss with the parent "the content of the IEP before [it is] finalized." R.K. v. New York City Dep't of Educ., 09 CV 4478, 2011 U.S. Dist. LEXIS 32248, at *48 (E.D.N.Y. Jan. 21, 2011).

   The record fails to support the SRO's finding that the parent and D.A.'s school participants were consulted meaningfully regarding the IEP, nor does it support the SRO's

14

dismissal of Plaintiffs' allegations regarding the failure of the CSE to share all documentation considered with himself and the representatives from D.A.'s school.  See Compl. Ex. B at 11.  In reaching her opposite conclusions, the IHO properly rejected Ms. Ye's claim that it was unnecessary to review D.A.'s 2009 psychoeducational evaluation at the meeting and properly concluded that since Ms. Ye deemed it important to review this evaluation prior to the meeting, then the CSE should have provided this evaluation to all meeting participants and should have discussed it during the CSE meeting.  See Compl. Ex. A at 6-7.  In reversing, the SRO provided no explanation as to why he disregarded the IHO's conclusion. See Compl. Ex. B at 11.  The CSE also failed to provide any documents to the general education teacher member, nor did it provide a copy of the classroom observation to D.A.'s teacher. T. 214-16.  Moreover, Ms. Ye and Ms. Fochetta prepared draft pages for D.A.'s IEP prior to the meeting, but they did not share copies of these with D.A.'s parent or teacher so that they could comment on whether these pages were accurate reflections of D.A.'s functioning and needs, nor did they review D.A.'s prior IEP goals to assess the progress he had made on those goals in developing new goals for him. T. 232-34.  The IHO properly concluded that these failures impeded the ability to the parent and Aaron to particulate fully in the meeting and in the development of D.A.'s IEP. See Compl. Ex. A at 6.

In reversing, the SRO erred in failing to carefully evaluate the IHO's findings, and improperly dismissed the significance of the CSE's failure to share documents with all meeting participants or to adequately discuss the content of the IEP with them. See Compl. Ex. B at 11. While the SRO correctly observed that "mere parental disagreement with a school district's proposed IEP and placement recommendation does not amount to a denial of meaningful participation," see Compl. Ex. B at 11 (citing P.K. v. Bedford Cent. Sch. Dist., 569 F. Supp. 2d

371, 383 (SDNY 2008)), he did not address several of the IHO's findings or Plaintiffs' claims regarding the failure of the CSE to provide Plaintiff and D.A.'s teacher with sufficient information and documentation during the April 2010 meeting.  The Court should decline to defer to the SRO's erroneous and unsupported conclusions. See R.E., 694 F.3d at 189.

> 2.     A Preponderance of the Evidence Fails to Support the SRO's Finding that the 2010-2011 IEP was Substantively Adequate.

An IEP must "provid[e] personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction," and "afford[] the student with an opportunity greater than 'trivial advancement.'" Bd. of Educ. v. Rowley, 458 U.S. 176, 203 (1982).  It must "set out the child's present educational performance, establish[] annual and short term objectives for improvements in that performance, and describe the specially designed instruction and services that will enable that child to meet those objectives." M.H., 712 F. Supp. 2d at 130.  While an IEP must be evaluated as of the time of its drafting, a court "should also use evidence acquired subsequently to the creation of an IEP . . . to evaluate the reasonableness of the school district's decisions at the time they were made." R.E., 694 F.3d at 186.  Contrary to the SRO's findings, the record shows that the IHO properly found that the CSE's procedural errors resulted in a substantively deficient IEP.

Contrary the SRO's findings, see Compl. Ex. B at 12-16, the April 2010 IEP failed to fully and accurately reflect D.A.'s then-current levels of performance and needs and failed to provide special education and related services tailored to meet his unique needs.  As the IHO concluded, the IEP failed to appropriately reflect or address D.A.'s present levels of performance and educational needs and failed to fully or accurately reflect the extent and depth of D.A.'s academic, speech/language, and social/emotional issues.  See Compl. Ex. A at 8.  For example, the IEP fails

to include any indication of D.A.'s anxiety, auditory processing issues, cognitive rigidity, cognitive levels, disparities in his cognitive functioning, need for a sensory gym, or fine motor functioning, all issues that negatively affected D.A.'s functioning in school and that should have been included in his IEP.  T. 337-38, 436-37, 444-45; Ex. C, I.  The SRO further erred in concluding that the IEP adequately set forth D.A.'s present levels of performance and needs, inappropriately making light of the IEP's omissions of significant issues, dismissively observing that an IEP need not exhaustively describe a student's issues, and erroneously finding that the management needs in the IEP made up for the IEP's failure to describe all of D.A.'s issues affecting his educational performance.  See Compl. Ex. B at 12-13.  To the contrary, as the IHO properly recognized, an IEP must set forth sufficient information to enable an educator to understand the student's issues and to address them appropriately and the record fails to support a finding that the IEP includes sufficient information in this case.  See Compl. Ex. A at 8.  The SRO found that the IEP adequately reflected the results of the materials the CSE considered in developing D.A.'s IEP, but that finding erroneously ignored the inadequacy of the materials actually considered by the CSE. See supra Part II.A.1.a.  The Court should defer to the IHO's more well-reasoned finding on this issue.

The record also fails to support the SRO's finding that the IEP goals were appropriate and sufficient for D.A. See Complaint Ex. B at 13-16.  The goals included in an IEP not only must be aligned with a student's needs, but also must include sufficient information to enable measurement of the goals, including the evaluative criteria and procedures to be used in measuring progress. See M.H., 712 F. Supp.2d at 155-56 (quoting N.Y.C.R.R. § 200.4(d)(2)).  The IHO carefully reasoned that the goals included in D.A.'s IEP fail to meet this standard. See Compl. Ex. A at 8.  In reversing, the SRO ignored the evidence in the record attesting to the lack of measurability of the IEP goals and

17

the fact that many of the IEP goals contemplated more than a year of progress given D.A.'s delays. <u>See</u> Compl. Ex. B at 13-16.  The SRO also inappropriately concluded that there was a sufficient number of goals to address D.A.'s needs, ignoring the omission of goals to address significant areas of D.A.'s need, including D.A.'s frustration tolerance, cognitive rigidity and anxiety. <u>See</u> <u>id.</u>

The record also fails to support the SRO's reversal of the IHO's finding that the 12:1:1 special class in a community school program recommendation was not appropriate for D.A.  As the IHO correctly found, the 12:1:1 recommendation was not appropriate for D.A. since it would not have provided D.A. with the "level and type of support" that the CSE knew D.A. continued to need in order to make appropriate progress. Compl. Ex. A at 7-8; IHO Ex. X.10-X.11.  D.A. required a small class with two appropriately-trained teachers in the classroom, and the IHO properly reasoned that Defendant lacked any justification for providing D.A. with a lesser degree of support for the SY. <u>See</u> Compl. Ex. A at 7-8; IHO Ex. X.10-X.11.  In reversing this finding, the SRO completely ignored the recommendations contained in Dr. Salsberg's 2009 evaluation regarding the kind of class environment D.A. required due to his issues, and found, without basis, that unspecified "supplementary school personnel" could have provided the kind of support that the individuals involved in D.A.'s education asserted that the second teacher in an appropriate classroom for D.A. would provide. <u>See</u> Compl. Ex. B at 16-17; Ex. I.  The SRO's finding not only ran counter to Dr. Salsberg's express recommendations and the recommendations of the individuals involved in D.A.'s education indicating that D.A. required the presence of two teachers in the classroom in order to make progress, but also was baseless since D.A.'s IEP failed to provide for any "supplemental personnel" to be available to assist D.A. in the classroom. T. 393-97, 400-01, 476-79; Ex. C.  The

SRO's finding was inadequately reasoned to merit deference, and the Court should thus instead defer to the IHO's findings. See R.E., 694 F.3d at 189.

The SRO also failed to address the IEP's failure to include any transition supports to facilitate D.A.'s transition to a new setting.  Although the CSE recommended a school and classroom larger than D.A. was attending prior to and at the time of the CSE meeting, and despite D.A.'s attention, sensory, and anxiety issues, as well as his difficulty interacting appropriately with his peers, the IEP did not include any transition supports or services to assist D.A. to successfully transition to the recommended program. See 8 N.Y.C.R.R. § 200.1(ddd); T. 387-88, 308-09, 425-26.

3.  The Court Should Defer to the IHO's Reasoned Conclusion That Defendant Failed to Sustain its Burden to Show that P.S. 6 Was Appropriate for D.A. and Capable of Implementing his IEP for the 2010-11 SY.

a.  The IHO Correctly Construed the Scope of Defendant's Burden of Proof with Respect to P.S. 6, and the SRO Erroneously Reversed.

The IHO properly rejected Defendant's argument that she "should not consider whether or not the P.S. 6 placement could have implemented the IEP because the Parents rejected the DOE's placement offer," correctly finding that Plaintiffs did not reject the placement until after they had considered it and found it to be inappropriate for D.A. See Compl. Ex. A at 8.  Therefore, she was correct in her finding that there was "no basis for relieving the DOE of the burden of proving that the CSE's proposed placement [would ] have been appropriate for the [D.A.]." See id.

The IHO properly recognized that to show that it offered D.A. a FAPE, Defendant had to show not only that it provided an appropriate placement offer, but also that the placement was capable of appropriately implementing the student's IEP. See D.C. v. New York City Dep't of Educ., 950 F. Supp. 2d 494, 509 (S.D.N.Y. 2013). The DOE must provide a student with a placement in

a specific class at a specific school site that is reasonably calculated to provide meaningful educational benefit and to avoid regression, meaning, inter alia, that it includes similarly functioning peers. Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 123 (2d Cir. 1998) (citation omitted); N.Y. Educ. L. § 4402(1)(b)(3)(b)(i); 8 N.Y.C.R.R. §§ 200.1(ww)(3)(i), 200.6(a)(3), (h).

In reversing the IHO's finding that P.S. 6 would not have been appropriate for D.A., the SRO applied an erroneous construction of the relevant legal standard and improperly concluded that Plaintiffs' challenges to the offered placement were speculative and irrelevant since Plaintiffs rejected P.S. 6 and never sent D.A. to the school. See Compl. Ex. B at 17-18. However, this interpretation of the holding in R.E. v. New York City Dep't of Educ., 694 F.3d 167 (2d Cir. 2012) and its progeny as precluding parental challenges to an offered placement where the student never attended the school has since been conclusively rejected by the Second Circuit. See M.O. v. New York City Dep't of Educ., No. 14-1473, 2015 U.S. App. LEXIS 12161, at *16-18, 22 (2d Cir. July 15, 2015) (rejecting the idea that "R.E. requires a child physically to attend a proposed placement school before [a parent can] challeng[e] that school's ability to implement the child's IEP" and clarifying that parental challenges to a placement's ability to implement a student's IEP services are not speculative, but viable where the defects in the placement were apparent to the parents at the time of their placement decision). While "[s]peculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement," see R.E., 694 F.3d at 195, that rule simply is meant to ensure that the appropriateness of an offered IEP and placement is assessed as of the time that the decision to unilaterally place is made and based upon the information available to the parties at the time, rather than based upon mere speculation that the public program might deviate from the IEP afterwards or based upon retrospective evidence offered to rehabilitate the IEP during

20

a hearing. See id.; D.C., 950 F. Supp. 2d at 510-11 ("[T]he Court evaluates whether, at the time [the

parent] was actually considering the proposed placement, the school could offer [services] in line

with the IEP.") (citation omitted). Parents may "challenge a placement as inappropriate 'if the alleged

defects were reasonably apparent . . . when the parent rejected the placement,' regardless of whether

[the parent] ever actually enrolled [her child at the school]." Scott v. New York City Dep't of Educ.,

12 Civ. 3558, 2014 U.S. Dist. LEXIS 41238, at *53-54 (SDNY Mar. 25, 2014) (citation omitted).

see also M.O., 2015 U.S. App. LEXIS 12161, at *18-19.  As the Second Circuit observed in M.O.:

> [I]t is not speculative to conclude that an IEP recommending a
> seafood-free environment, for a child with a life threatening seafood
> allergy, could not be implemented at a proposed school that was not
> seafood free.  Nor is it speculative to conclude that an IEP
> recommending one-on-one occupational therapy, outside of the
> classroom, could not be implemented at a school that provided only
> in-class occupational therapy in a group setting.

M.O. 2015 U.S. App. LEXIS 12161, at *18-19 (citing D.C., 950 F. Supp. 2d 494 at 513; B.R.,

910 F. Supp. 2d at 676-79)).  Thus, it is clear that information gleaned as a result of

conversations with school personnel or visits to a recommended school placement suggesting

that the placement would be unable to appropriately implement a student's IEP program or

appropriately address the student's needs is not speculative, and parents must be able to rely upon

such information to make an informed decision about the placement offered.

   In reversing, the SRO not only erred in interpreting the relevant legal standard, see supra,

but also in determining that the parent's claims were speculative and foreclosed because it was

"undisputed" that Plaintiffs rejected P.S. 6 before the school became obligated to implement

D.A.'s IEP. See Compl. Ex. B at 18.  To the contrary, Plaintiffs did not reject the offered

placement for D.A. until October 27, 2010, well after the start of the 2010-11 SY when P.S. 6

became obligated to implement D.A.'s IEP.  Moreover, in reaching his conclusions, the SRO improperly suggested that there is a presumption that an offered placement will be able to implement a student's IEP for a given SY. See Compl. Ex. B at 17.  To the contrary, the application of any such "presumption" would improperly shift the burden of proof to the parents to *disprove* the appropriateness of an offered placement when the law clearly requires a school district to prove that the placement it recommends is reasonably calculated to provide meaningful benefit and to enable the child to make measurable progress. See N.Y. Educ. L. § 4404(1)(c).

The IHO thus correctly found that Defendant had an obligation to show that the placement offered to D.A. for the 2010-11 SY was appropriate and capable of appropriately implementing his IEP as of the time Plaintiffs actually considered the program for D.A. in order to meet its burden of proof.  The Court owes no deference to the SRO's erroneous contrary interpretation of the applicable legal standard, see Lillbask, 397 F.3d at 83, and the Court should reverse the SRO's finding that Plaintiffs could not sustain their challenge to P.S. 6 in this case and find that the SRO erred in failing to assess Plaintiffs' claims regarding P.S. 6 on appeal.

      b.    <u>The IHO Correctly Found that Defendant Failed to Sustain its Burden of Proof with Respect to P.S. 6, and the SRO Erroneously Reversed.</u>

The IHO properly found that Defendant failed to meet its burden of proving that P.S. 6 would have been able to appropriately implement D.A.'s IEP and to "suitably group[ D.A.] for instructional purposes." See Compl. Ex. A at 8.  While Jennifer Radden, the teacher of the 12:1:1 class recommended for D.A. at P.S. 6 testified that she would have been able to implement D.A.'s IEP, she based this testimony exclusively on D.A.'s contested IEP. T. 101, 103-04, 113. The record also belies Ms. Radden's contention.  Among other things, Ms. Radden admitted that

she had never had to support a student who required sensory tools, that she had never implemented the suggestions of an occupational therapist in her classroom to support a student with sensory needs, that she did not have any sensory corner or tools in her classroom during the SY, and that she could not say for certain that an OT would have been able to coordinate with her to meet D.A.'s need for sensory support in the classroom during the SY. T. 152-53, 348; Ex. E. Moreover, it is undisputed that P.S. 6 lacked a sensory gym, which D.A. required access to throughout the school day to remain regulated.  T. 153, 313, 324, 338, 351-52, 423-24; Ex. E.

As the IHO properly found, Defendant also failed to show that the offered class would have provided D.A. with appropriate and similarly-functioning peers and peer models.  T. 134, 151, 143, 151-52, 161-66, 167, 323, 349-52, 447-48; Ex. E, I, DD, EE, FF, GG, HH, II, JJ.  In contrast to D.A., none of the students in Ms. Radden's class had sensory issues or required sensory tools or breaks throughout the day; only two of the students received OT during the SY, but mostly for handwriting and organization, not sensory issues; none of the students had significant auditory processing issues; none were sensitive to loud noises, easily overwhelmed in groups, or had difficulty controlling themselves in the face of overwhelming input of stimuli; and none had anxiety issues, manifested cognitive rigidity, or had a motor tic like D.A.  T. 134, 143, 151-52, 161-62, 164-66; Ex. E.  While one other student in the class had ADHD, the record shows that this student was mainstreamed for the majority of the school day, and none of the students in the classroom presented with attentional issues or hyperactivity. T. 162, 167, 347; Ex. E, GG.12. The IHO properly recognized that being the only student with his issues would have negatively impacted D.A.'s self-esteem, among other things, and would have negatively affected his ability to progress academically, socially, and emotionally.  T. 323, 349-52, 447-48.  As the IHO found,

23

the D.A.'s social/emotional issues differed from the other students in the class, and the students in the class were expected to engage in a level of independent work that D.A. was not yet capable of during the 2010-11 SY since the students in the class did not need the high level of individual support that D.A. required. See Compl. Ex. A at 9.  The record shows that the students in the class also would not have provided D.A. with an appropriate social peer group since they were socially immature, would get into conflicts a few times a week, including physical fights, and some would be aggressive with other students. T. 122-24, 130-31, 132-34, 163; Ex. EE.4, GG.

In addition, while not considered by the IHO, Defendant failed to establish that the school environment at P.S. 6 would be appropriate for D.A. since the record shows that the school would not have provided D.A. with the small, safe, structured environment with minimized distractions that he required due to his anxiety and impulsivity.  The large settings for lunch and recess (110-120 students) would not have been appropriate for D.A., and P.S. 6 would not have provided D.A. with sufficient or appropriate support during these times to remain regulated and to negotiate conflicts with his peers.  T. 153-55, 207, 51-52; Ex. E, I.  The arrival and dismissal settings at P.S. 6 would also have been overwhelming and inappropriate for D.A., given the size of those settings and the inadequate adult support available at those times. T. 156-59; Ex. E.

While Defendant provided testimony responding to some of Plaintiffs' allegations regarding P.S. 6 and its inappropriateness for D.A. during the impartial hearing, Defendant should not be permitted to rely upon this retrospective testimony contradicting Plaintiffs' understanding of the placement in meeting its burden of proof since the information was never communicated to them at any point prior to the impartial hearing. See D.C., 950 F. Supp. 2d at 510-13 (finding "testimony regarding events that occurred after the unilateral placement decision

24

was made or testimony of information that alters the representations that were made to the

parent" inadmissible).  Z.A. credibly testified regarding his and his wife's visit to P.S. 6, and

Plaintiffs reasonably relied upon their observations and the information provided to them during

their visit and advised the DOE of their understanding and concerns, but the CSE failed to ever

respond at any point prior to the impartial hearing. See supra Facts Part 2.

**B.**   **The SRO Erred Reversing the IHO's Decision and in Finding that Defendant Offered D.A. a FAPE for the 2011-2012 SY.**

    1.   A Preponderance of the Evidence Fails to Support the SRO's Finding that the 2011-12 IEP Was Procedurally Adequate.

        a.   The CSE Failed to Consider Sufficient Evaluative Material in Developing D.A.'s 2011-12 SY IEP.

A review of the record fails to support the SRO's finding that CSE relied upon sufficient

evaluative material in developing D.A.'s 2011-12 SY IEP. See Compl.  Ex. D at 7-8; 34 C.F.R.

§§ 300.4, 300.305, 300.324; 8 N.Y.C.R.R. § 200.4(b), (f)(1); see also supra Part II.A.1.a.  The

CSE failed to conduct any evaluations in preparation for the June 2011 meeting, and admittedly

failed to review or rely upon any psychoeducational testing of D.A., even though D.A.'s parents

had previously provided the CSE with a copy of the 2009 psychoeducational evaluation, and the

CSE thus lacked any data regarding D.A.'s cognitive functioning or needs. Tr. 171-73, 287-89.

The CSE also failed to conduct or review a social history, OT evaluation, SL evaluation, or

medical report in developing the IEP. Tr. 171-73, 287-89.  Moreover, while the CSE had SL and

OT progress reports available from fall 2010 and used these to develop related service

recommendations and goals, Dr. Steve Abramowitz, the school psychologist who testified for the

DOE regarding the development of the IEP, acknowledged that D.A. could have achieved the

goals set forth in the progress reports before the start of the 2011-12 SY and that the CSE had

failed to consult D.A.'s service providers regarding whether the goals in the reports would be

appropriate for D.A. for the 2011-12 SY before including them in the IEP.  Tr. 142-43, 160, 163,

186-87; DOE Ex. 5, 6, 8.11-14. The SRO's conclusions on this issue were neither well-reasoned

nor careful since the SRO merely listed the documents the CSE considered and concluded

summarily that they contained adequate information regarding D.A.'s needs. <u>See</u> Compl. Ex. D

at 7-8.  Such conclusory findings are neither well-reasoned, nor careful and do not warrant

deference. <u>See</u> <u>B.R.</u>, 910 F. Supp. 2d at 677-78.

> b.   <u>The CSE Failed to Adequately Consult the Parent or the Participants from
> Aaron Regarding its Recommendations for the 2011-12 SY.</u>

The record fails to support the SRO's conclusion that the parent and D.A.'s school

participants were consulted meaningfully regarding the IEP, ignoring the significance of the

CSE's failure to provide all documents considered, including the draft IEP, to all meeting

participants. <u>See</u> Compl. Ex. D at 16-17.  The record shows that the CSE drafted the entire IEP

prior to the June 1011 IEP meeting and brought this draft to the meeting, but failed to share it

with the parents for input. Tr. 128; 134-35, 140-41, 167-69, 210; DOE Ex. 8. While Dr.

Abramowitz testified that changes were made to this document based upon input provided by the

parents and D.A.'s teacher during the meeting, the IEP that the parents received after the June

meeting did not reflect the modifications that were discussed during the meeting, demonstrating

that the parents and D.A.'s teacher were deprived of the opportunity to provide critical input into

the actual IEP. Tr. 316; Par. Ex. W.  The SRO made light of the fact that "very little" changed in

the draft IEP before it was finalized and sent to the parents by incorrectly observing that

26

Plaintiffs "do not dispute the substantive adequacy of the IEP they received." See Compl. Ex. D at 6.  While Plaintiffs did not challenge the IHO's findings that the IEP goals and present levels of performance were appropriate in appealing the IHO's decision to the SRO, the IHO failed to reach any of Plaintiffs' other claims regarding the substantive adequacy of the IEP, rendering it unnecessary for Plaintiffs to raise those issues in their SRO papers to preserve their substantive challenges to D.A.'s IEP for appeal.  See Compl. Ex. C.  Moreover, the record also shows that the CSE failed to ensure that D.A.'s teacher had copies of the classroom observation, SL and OT reports, or March 2011 Aaron report relied upon by the CSE in developing D.A.'s IEP such that D.A.'s teacher could meaningfully participate in the meeting.  Tr. 170-71; DOE Ex. 12.

Furthermore, during the meeting, the parents expressed their concerns regarding the CSE's proposed 12:1:1 class and stated that they did not believe such a program would provide D.A. with the level of individual attention and support from a teacher that he required to make appropriate progress. Tr. 291-93, 313; DOE Ex. 8.17.  The CSE was aware that D.A. was then attending a more supportive class and school program, and that the individuals involved in his education strongly believed he continued to require an equivalent level of support, yet the CSE failed to discuss the possibility of recommending a more supportive program for D.A. for the 2011-12 SY. Tr. 291-93, 313; DOE Ex. 8.17.

2.    A Preponderance of the Evidence Fails to Support the SRO's Finding that the 2011-12 IEP was Substantively Adequate.

The record shows that the procedural errors the CSE committed resulted in a substantively inappropriate IEP for D.A. for the 2011-12 SY.  See supra Part II.A.2.  The IHO and SRO erred in failing to address Plaintiffs' claim that Defendant failed to prove that the 12:1:1 special class

in a community school program recommendation was appropriate for D.A. for the 2011-2012 SY.  See Compl. Ex. C; Compl. Ex. D.  The record shows that D.A. required more individual support from a teacher than would have been provided in a class with just one teacher and a paraprofessional, and that the CSE lacked justification for recommending a lesser level of support than the individuals involved in D.A.'s education stressed that he continued to require at the time of the June 2011 IEP meeting. Tr. 292; Par. Ex. E.  While Dr. Abramowitz argued that the Aaron progress report supported the CSE's recommendation of a 12:1:1 class, he claimed that he was unaware of the nature of the program that D.A. attended at the time of the IEP meeting and whether it was equivalent to a DOE 12:1:1 class, which the record shows it was not. Tr. 202-03, 205-06.  Moreover, Dr. Abramowitz claim that he was ignorant of the true nature of D.A.'s class at Aaron was disingenuous given Z.A.'s testimony that Z.A. stressed D.A.'s continued need for a classroom with two teachers during the IEP meeting. Tr. 206, 220-21; DOE Ex. 12-8.

Defendant also failed to show that the IEP contained sufficient or appropriate management needs to address D.A.'s needs during the 2011-12 SY.  Specifically, the IEP failed to reflect D.A.'s management needs for extra time, wait time, frequent breaks, redirection, deep pressure, repetition and rephrasing of directions, clear expectations, and specific sensory tools such as balls, putty, a visual timer, and chewing sugar free gum, teacher support to problem solve conflicts with peers, checklists, provision of a separate workspace for math computation, previewing information, additional time to organize his materials before transitions, teacher assistance to locate and correct his errors, and asking "wh" questions to help D.A. formulate his thoughts to complete tasks, all of which were either discussed at the CSE meeting as needs for

28

D.A. or reflected in D.A.'s most-recent Aaron progress report.  DOE Ex. 8.4, 8.6, 12.2-12.5, 12.7; Par. Ex. W.4, W.6.  The IEP also failed to address D.A.'s needs for appropriate testing accommodations, including breaks, questions read aloud, refocusing, and access to putty and gum to remain focused.  Ex. 8.18, W.18.  Both the IHO and SRO improperly failed to address these claims in their decisions.  See Compl. Ex. C; Compl. Ex. D.

> 3. The Court Should Defer to the IHO's Reasoned Conclusion That Defendant Failed to Sustain Its Burden of Proof Because It Failed to Show That JHS 104 Was Capable of Appropriately Implementing D.A.'s 2011-12 SY IEP.

> a. The IHO Correctly Construed the Scope of Defendant's Burden of Proof to Include an Obligation to Show its Offered Placement Was Appropriate for D.A. and Capable of Providing D.A. with a Program in Conformity with his IEP, and the SRO Erroneously Reversed.

The IHO properly found that Defendant failed to sustain its burden of demonstrating that it offered a FAPE for D.A. for the 2011-12 SY since it failed to show that the placement offered to D.A. would have appropriately implemented D.A.'s IEP or would have provided him with a program in conformity with his IEP. See Compl. Ex. C at 6-8.  To show that it offered a student a FAPE, Defendant must demonstrate not only that it provided an appropriate placement offer, but also that the placement was capable of appropriately implementing the student's IEP. See supra Part II.A.3.a.

The SRO improperly reversed the IHO's finding that JHS 104 would not have been appropriate for D.A., erroneously concluding that Plaintiffs' challenges to the offered placement were speculative and irrelevant since Plaintiffs rejected JHS 104 and never sent D.A. to the school. See Compl. Ex. D at 8-9.  In reaching his conclusions, the SRO inappropriately construed the law with respect to Defendant's burden of proof with respect to the appropriateness of the

offered placement in this case. See supra Part II.A.3.a. Contrary to the SRO, the IHO correctly

found that Defendant had an obligation to show that the placement offered to D.A. for the 2011-

2012 SY was appropriate and capable of appropriately implementing his IEP as of the time D.A.

actually considered the program for D.A.  The Court owes no deference to the SRO's erroneous

contrary interpretation of the applicable legal standard, see Lillbask, 397 F.3d at 83.  For the

same reasons, the Court should find that the SRO erred in failing to consider Plaintiffs'

challenges to the placement offered to D.A. for the 2011-12 SY. See Compl. Ex. D at 8-9.

### b.   The IHO Correctly Found that Defendant Failed to Sustain its Burden of Proof with Respect to JHS 104 and the SRO Erroneously Reversed.

The IHO properly found that Defendant "failed to offer [D.A.] a program that conformed to

[his] IEP generated on June 1, 2011 and resulted in a denial of FAPE for [D.A.] for the 2011-

2012 [SY]."  See Compl. Ex. C at 7.  The IHO properly concluded that Defendant had failed to

meet its burden to show that JHS 104 could have implemented D.A.'s IEP as written, since the

testimony of Ms. Polsinelli, the teacher of the class recommended to D.A., confirmed the

parents' understanding from their visit to the school that the offered class did not operate as a

12:1:1 class for the entire school day, demonstrating that the school would not have been able to

provide D.A. with the full-time 12:1:1 program for 35 periods weekly mandated by his IEP. See

Compl. Ex. C at 7; DOE Ex. 8; Tr. 64, 68, 76-79, 109-10.  The IHO correctly reasoned that the

evidence showing Defendant had failed to offer D.A. a placement that conformed to his IEP

resulted in a deprivation of FAPE since "not providing [D.A.] with approximately 10 periods per

week of instruction in the 12:1:1 was more than a *de minimis* failure in the DOE's ability to

implement [D.A.'s] IEP." See D.D.-S. v. Southold Union Free Sch. Dist., No. 09 Civ. 5026,

2011 U.S. Dist. LEXIS 100809, at *13 (E.D.N.Y. Sept. 2, 2011); Compl. Ex. C at 7.  The DOE's

own witness, Dr. Abramowitz, admitted that a subsequent amendment of D.A.'s IEP with the

consent of D.A.'s parents would have been necessary to make a program that deviated from

D.A.'s IEP, such as the offered program at JHS 104, legally valid. Tr. 198-200; 8 N.Y.C.R.R. §

200.4(g).  Furthermore, placement in mainstream classes for part of his school day would not

have been appropriate for D.A. since he would have been "extremely uncomfortable" and

"absolutely overwhelmed" in such settings given his issues, mainstream classes would not have

provided him with the level of individual attention and support that he required, and his IEP fails

to recommend any supports to assist D.A. in mainstream class settings.  Tr. 300; DOE Ex. 8.

Defendant also failed to demonstrate that the placement and offered class would have

provided D.A. with appropriate and similarly-functioning peers or with appropriate peer models,

as is required by law. See Walczak, 142 F.3d at 123 (quoting 8 N.Y.C.R.R. § 200.6(a)(3)(i)–(ii)).

Ms. Polsinelli testified that D.A. would have been one of the highest functioning students

academically in her class and that the range of decoding and reading comprehension ability in the

class spanned five grade levels during the 2011-12 SY and spanned three grade levels for math.

Tr. 92-93, 111.  Moreover, only two or three of the students were classified as being speech or

language impaired like D.A., and none of the students in the class had similar sensory needs to

D.A., including having issues with self-regulation and needing specific sensory tools and sensory

breaks throughout the day. Tr. 93-94, 98, 101, 108, 115.  Z.A. testified that being the only student

with these issues would not only have prevented D.A. from receiving the level of individual

attention and support he needed, but also would have negatively affected D.A.'s self-esteem

since he would have felt different from the other students in the class.  Tr. 300-01.

Defendant also failed to establish that JHS 104 would have provided D.A. with the safe, structured environment with appropriate peers and peer models that he required to make measurable progress and avoid regression.  There were approximately 1,100 students at JHS 104 during the 2011-2012 SY, and the entire sixth grade (365 students) ate lunch together supervised by less than 10 teachers and administrators. Tr. 64-65, 81-82.  The school and lunch settings, as well as the settings for arrival and dismissal at the school, would have been overwhelming for D.A. and would have negatively affected his ability to be available for learning.  Tr. 299-301; Ex. E.  Additionally, Ms. Polsinelli confirmed the parents' concerns for D.A.'s safety and social/emotional security in the offered placement and regarding the appropriateness of the peer group in the school and offered class for D.A.'s academic progress, as well as his socialization and behavior, since she confirmed that physical fighting, harassment, and bullying took place among the students during the 2011-12 SY.  Tr. 85-87; Par. Ex. G.11, F.11.  Placement in a classroom and school environment with students who have behavioral issues would not have been appropriate for D.A. given his self-regulation, executive functioning, and social/emotional issues, and would have posed a safety concern. Tr. 298-99; Par. Ex. E.

While Defendant provided testimony responding to some of Plaintiffs' allegations regarding P.S. 6 and its appropriateness for D.A. for the 2011-12 SY during the impartial hearing, Defendant should not be permitted to rely upon this retrospective testimony contradicting Plaintiffs' understanding of the placement in meeting its burden of proof since the information was never communicated to them at any point prior to the impartial hearing. See D.C., 950 F. Supp. 2d at 510-13.  Z.A. credibly testified regarding his and his wife's visit to P.S. 6, and Plaintiffs reasonably relied upon their observations and the information provided to them

32

during their visit and advised the DOE of their understanding and concerns, but the CSE failed to

ever respond at any point prior to the impartial hearing. See supra Facts Part 5. The IHO thus

correctly found that Defendant failed to show that JHS 104 was appropriate for D.A. and capable

of implementing his IEP and thus failed to show that it offered D.A. a FAPE for the 2011-12 SY.

## III.   AARON APPROPRIATELY ADDRESSED D.A.'S NEEDS FOR THE 2010-11 AND 2011-12 SYS.

The IHOs properly concluded that Aaron was appropriate for D.A. for the 2010-11 and 2011-

12 SYs since the record amply shows that Aaron carefully crafted programs that were individually

tailored to D.A.'s needs and that enabled him to make progress. See Compl. Ex. A at 9-10; Compl.

Ex. C at 9-11; Gagliardo, 489 F.3d at 102.

## IV.   EQUITABLE CONSIDERATIONS SUPPORT PLAINTIFFS' CLAIMS.

To receive an award of tuition reimbursement, a weighing of the equities must support an

award for tuition reimbursement, as "equitable considerations [relating to the reasonableness of

the action taken by the parents] are relevant in fashioning relief." Frank G., 459 F.3d, at 356

(citation omitted); see also N.R. v. Dep't of Educ. of the City Sch. Dist. of the City of New York,

No. 07 Civ. 9648, 2009 WL 874061, at *6 (S.D.N.Y. Mar. 31, 2009) (noting that "[a] major

consideration . . . is whether the parents have cooperated . . . throughout the process to ensure

that their child receives a FAPE").  The hearing records support the IHOs' conclusions that

equities favored Plaintiffs in both cases since the records show that the parents fully cooperated

with the CSE, were willing to consider an appropriate public placement for their son for both

SYs, and gave timely and appropriate notice of their concerns and of their intent to unilaterally

place D.A. at Aaron and to seek tuition reimbursement for both SYs. See supra Facts; Compl.

Ex. A at 10-12; Compl. Ex. C at 11-12.  Accordingly, the records fully support the IHOs' finding

that Plaintiffs qualify for tuition reimbursement. See Compl. Ex. A at 12; Compl. Ex. C at 12.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court find that Defendant

failed to meet its burden to prove that it offered D.A. a FAPE for the 2010-11 and 2011-12 SYs; that

Aaron appropriately addressed D.A.'s needs for the SYs; and that equities support Plaintiffs' claims

for tuition reimbursement.  Accordingly, Plaintiffs ask that the Court award them judgment as a

matter of law, reverse the SRO's decisions, reinstate the IHO's decisions, direct Defendant to

reimburse them for the cost of D.A.'s tuition for the 2010-11 and 2011-12 SYs, and award them

costs and attorney's fees, as well as any other such relief that the Court deems appropriate.

Dated:     New York, New York
           September 16, 2015


                           Respectfully Submitted,


                           _____s/_____
                           LAUREN A. BAUM (LAB 1899)
                           KIRA I. EPSTEIN (KE 2009)
                           Law Offices of Lauren A. Baum, P.C.
                           61 Broadway, Suite 1060
                           New York, New York 10006
                           Telephone: (212) 644-4414
                           Facsimilie: (212) 644-8470
                           Counsel for Plaintiff

TO:  Justin P. Killian (Via ECF)
     Special Assistant Corporation Counsel
     Office of Corporation Counsel
     Counsel for Defendant

34